In re BESTWAY PRODUCTS, INC.,
formerly Best Trading Co.,
Debtor.

In re Marvin Lee WETHERBEE, Debtor.

Marvin Lee WETHERBEE, Plaintiff,

v.

WILLOW LANE, INC., Defendant.

Bankruptcy Nos. 283–00029–
C–7, 91–23191–C–7.
Adv. No. 92–2407.

United States Bankruptcy Court,
E.D. California.

Feb. 16, 1993.

Wayne B. Harbarger, III, Sacramento, CA, for plaintiff, debtor.

Peter A. Buck, Jones, Kerr & Buck, Sacramento, CA, for defendant.

## MEMORANDUM DECISION ON MOTION TO VACATE DISCHARGE

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

The question is whether a discharge may be vacated as a clerical error ten years after it was entered. The short answer is that a discharge can be vacated pursuant to Federal Rule of Civil Procedure 60(a) if its entry was a clerical mistake or an error arising from oversight or omission.

This is a tale of four bankruptcy cases involving one man, sometimes as debtor and sometimes as president of the debtor

corporation. The bankruptcy cases were filed in 1980, 1983, 1985, and 1991. He says a discharge entered in his name in the 1983 case shields him from a 1984 judgment. The judgment creditor filed a motion to vacate the 1983 discharge as a clerical error committed in a case in which the person discharged was not the debtor. The outcome depends upon whether the individual or his corporation was the debtor in the 1983 case.

## FACTS AND PROCEDURAL HISTORY

Marvin Lee Wetherbee ("Wetherbee") and his spouse operated a T-shirt business through his corporation, Bestway Products, Inc. ("Bestway Products"). Since the time that this business folded, he has engaged in other business endeavors.

The saga begins in 1978 with the filing of a civil fraud action arising out of Wetherbee's efforts to franchise the T-shirt business.[1] That lawsuit transcends the four subsequent bankruptcies. The movant in this Rule 60(a) motion is the defendant in the adversary proceeding in which the motion was made and is the assignee of the judgment won by the original plaintiffs.

The first bankruptcy is the chapter 11 case of *In re Bestways Products, Inc.,* filed April 2, 1980, as Case No. 280–00767. No plan of reorganization was confirmed. The 1980 case was dismissed August 28, 1982.

The second bankruptcy is the chapter 7 case filed January 5, 1983, as *In re Lee Wetherbee dba Bestway Products, Inc.,* Case No. 283–00029, with Weldon Reeves as counsel. It is this case that is the focal point of this Rule 60(a) motion. Following the standard administrative practice of relying on the representations on the face of the petition, the clerk processed the 1983 case as one involving an individual debtor.

Although the 1983 case was initially processed as the case of an individual debtor, the petition, schedules, and statement of financial affairs suggested that the real debtor was the corporation, Bestway Products. A corporate resolution authorized filing the case. The schedules were characteristic of a business. There were no assets (not even clothes), no property was claimed as exempt, and only business-type debt incurred before March 1980 was listed.[2] Other aspects of the initial papers, however, suggested Wetherbee, the individual, was the debtor—including a statement of financial affairs for a debtor not engaged in business.[3]

The initial papers in the 1983 case were amended to correct the name of the debtor to "Bestway Products, Inc., formerly Best Trading Co." and substituting a statement of financial affairs for a corporation.[4] Wetherbee's name was dropped from the case name. This was contemporaneous with the initial session of the meeting of creditors.[5]

---

1. *Carlstedt v. Wetherbee,* Case No. 278095, Sacramento County Superior Court (Dec. 8, 1978).

2. The unsecured claims ($55,687.55) were for purchases of inventory and advertising. The secured claims ($6,900.00) were for a mailing machine and a copy machine. The required statement about the debtor's previous payments to attorneys listed payment of fees for the 1980 case. At question 7 on the statement of financial affairs, it was averred that this was the same debtor as in the *1980 case.* Another document contained an averment that this was the same debtor (or partner or joint venturer) as in 1980.

3. The debtor's name was listed as "Lee Wetherbee dba Bestways Products, Inc." A Statement of Financial Affairs for Debtor Not Engaged in Business was filed. And the Case Cover Sheet indicated that the debtor was an individual.

4. The Amendment Cover Sheet recited that its purpose was "to show correct name of petitioner" and that the correct name was "Bestway Products, Inc., formerly Best Trading Co." The name Lee Wetherbee disappeared from the caption. A Statement of Financial Affairs for Debtor Engaged in Business was filed as the amended document and unambiguously showed the corporation as the debtor. The verifications were signed by "Weldon Ray Reeves attorney for debtor" (amendment) and "Weldon Ray Reeves attorney for Lee Wetherbee" (statement of financial affairs) instead of by Wetherbee, himself.

5. The first meeting of creditors was scheduled for February 14, 1983, and at that meeting was continued until March 14, 1983. The amendment papers were dated February 11, 1983, and filed February 15, 1983.

The clerk did not, however, change the records of the 1983 case to reflect that the debtor was a corporation.[6] No complaint to deny discharge having been filed and the deadline having passed, a discharge was issued to the debtor as a matter of administrative routine. The discharge document bore the caption "Lee Wetherbee," was dated and filed April 14, 1983, entered on docket April 27, 1983, and not served by the clerk until June 16, 1983, the day before the order closing the case. The judge's signature was affixed to the discharge order by a court employee acting under delegated authority and using the judge's signature stamp.

On April 26, 1983, there was a hearing on a motion for relief from stay seeking permission to proceed with the 1978 civil fraud action in state court. Mr. Reeves represented the debtor at the hearing. The motion papers and the order resolving the motion all showed the debtor as Bestway Products.[7] The judge authorized the litigation to proceed against "all defendants [including Wetherbee] except Bestway Products, Inc."

■ In subsequent state court proceedings, Mr. Reeves also acted as Wetherbee's counsel. No defense of discharge was raised. A money judgment for compensatory and punitive damages was entered October 29, 1984. On appeal, Mr. Reeves filed a status report stating that Bestway Products had been the debtor in the 1983

bankruptcy case and had accordingly been dismissed as a party so that the action could proceed against the other defendants.[8]

The third bankruptcy case is *In re Lee and Pamela Wetherbee,* filed under chapter 11 on July 22, 1985, as Case No. 285–02771, with Mr. Reeves as counsel yet again. This time there was no doubt that the debtors were individuals.[9] Property and debts characteristic of individuals were scheduled. The Wetherbees averred that they had not previously been debtors in a bankruptcy case. The 1985 case was dismissed in 1987 after the debtors failed to obtain confirmation of a plan of reorganization.

Bankruptcy number four is *In re Marvin Lee Wetherbee,* filed as Case No. 91–23191 (April 26, 1991), under chapter 11 and subsequently converted to chapter 7. Wetherbee, now divorced and represented by new counsel, averred that he had been a debtor one time—in the 1985 case. No reference was made to the 1983 case, in which he now contends he was the debtor.

Wetherbee did not rely on the existence of the 1983 discharge for any purpose until fourteen months after filing the 1991 case when he brought an adversary proceeding seeking a declaration that the 1984 money judgment rendered in the 1978 civil fraud action is void because of the discharge issued in the 1983 case.[10] The defendant

---

6. The Bankruptcy Case Docket originally listed the name of debtor as "Wetherbee, Lee" without the dba name. Following the amendment to the petition, the docket sheet entry for the debtor's name was changed to add "/Bestway Products, Inc." after "Lee Wetherbee" and the penciled notation "Per Amendment" made above Bestway Product's name.

7. The name of the debtor in the caption was "Bestway Products, Inc., formerly Best Trading Co."

8. On January 4, 1983, defendant Bestway Products, Inc., caused to be filed a Chapter 7 petition in Bankruptcy Court for the Eastern District of California, Case Number 283–0029–W–7 [sic]. Thereafter, Plaintiffs dismissed their action agoinst [sic] the corporation and proceeded against remaining defendants.... Appellant's Settlement Conference Statement, *Carlstedt v. Wetherbee,* No. 3 Civil 24680, Coun-

ty No. 2/8095, Cal. 3rd Dist.Ct.App. (Jan. 23, 1985).
 This document was an exhibit to, and quoted in, the memorandum in support of the Rule 60 motion. It was not, however, authenticated. *See* Fed.R.Evid. 901(a). The available evidentiary objection was waived when counsel failed to raise it in either the written opposition or at the hearing. Once deemed authentic, it is plainly admissible at the instance of movant. Fed. R.Evid. 801(d)(2)(C) and (D).

9. The debtors were "Lee Wetherbee, Pamela Wetherbee ind & dba Garment Printers, Aloha Florist, Best Trading Co.[sic] Westwind Industries, Bird of Paradise."

10. *Wetherbee v. Willow Lane, Inc.,* Adv. No. 92–2407 (Aug. 27, 1992).

countered with a motion to vacate the discharge order as a clerical error.

## DISCUSSION

The analysis begins with the applicability of Rule 60(a) and why there was a clerical mistake or an error arising from oversight or omission deserving of correction. It then proceeds to explain why the same facts also warrant relief under Rule 60(b)(4). The justification for taking judicial notice of court records sua sponte from Wetherbee's 1985 case is explained. Finally, the correct procedure for remedial action in an old bankruptcy case that has been closed is addressed.

### 1. *Rule 60(a) in Bankruptcy.*

■ We can dispatch without adieu the debtor's argument that a bankruptcy court lacks power to alter or amend an order under Rule 60 because, he argues, the rule does not apply in bankruptcy. One need look no farther than Federal Rule of Bankruptcy Procedure 9024 to reject that argument: "Rule 60 F.R.Civ.P. applies in cases under the Code" except in three situations not applicable here.[11] Fed. R.Bankr.P. 9024. Thus, the rule applies generally in bankruptcy.[12] And, specifically, Rules 60(a) and 60(b)(4) apply in the same manner as in other federal civil litigation.[13]

Rule 60(a) authorizes correction of two categories of defect, clerical mistakes and errors arising from oversight or omission:[14]

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

Fed.R.Civ.P. 60(a).

■ The focus is on what was intended. Thus, Rule 60(a) may be invoked to make a judgment or order reflect the actual intentions of the court plus necessary implications. *Blanton v. Anzalone,* 813 F.2d 1574, 1577 (9th Cir.1987); *Korea Exch. Bank Ltd. v. Hanil Bank (In re Jee),* 799 F.2d 532, 535 (9th Cir.1986); *Jones & Guerrero Co. v. Sealift Pacific,* 650 F.2d 1072, 1074 (9th Cir.1981).

The trial court has "very wide latitude" in this respect. *Blanton,* 813 F.2d at 1577; *Korea Exch. Bank,* 799 F.2d at 535; *Woodworkers Tool Works v. Byrne,* 191 F.2d 667, 676 (9th Cir.1951). It does not matter whether the mistake was made by the judge or by a clerk. *Id.*

---

**11.** The complete text of Rule 9024 is:

Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

Fed.R.Bankr.P. 9024.

The second exception is not applicable here because 11 U.S.C. § 727(e) is merely the statute of limitations for actions to revoke a discharge on account of the misconduct specified at 11 U.S.C. § 727(d). Action under Rules 60(a) and 60(b)(4) has nothing to do with those misconduct causes of action.

**12.** Even if there were any arguable merit to debtor's theory that Rule 60 does not apply, it was settled before the Federal Rules of Civil Procedure were ever adopted that a bankruptcy court "has the power, for good reason, to revise its judgment upon seasonable application and before rights have vested in the faith of its action." *Wayne United Gas Co. v. Owens–Illinois Glass Co.,* 300 U.S. 131, 137, 57 S.Ct. 382, 385, 81 L.Ed. 557 (1937). In that instance, the Supreme Court approved reconsideration of the order dismissing a bankruptcy petition, thereby allowing the case to be restored to active status. If Rule 60 did not apply, then the *Wayne United Gas* doctrine would fill much of the void.

**13.** Cases that make generalizations about applying Rule 60 only in "extraordinary circumstances" usually are not focused on Rules 60(a) and 60(b)(4). *See, e.g., Boyertown Data Systems, Inc. v. Tucci (In re Tucci),* 81 B.R. 320 (Bankr.E.D.Pa.1988). Neither Rule 60(a) nor Rule 60(b)(4) requires extraordinary circumstances. A mistake is a mistake, and void is void.

**14.** Fed.R.Civ.P. 60(a), incorporated by Fed.R.Bankr.P. 9024 (language re appeal omitted).

Any "blunder in execution" can be corrected under Rule 60(a), while some other procedural basis (*e.g.* Rule 60(b)) is needed when the court is changing its mind.[15] *Blanton,* 813 F.2d at 1577 n. 2. When the blunder is the entry of an order as a ministerial act that does not constitute a conscious determination by a judicial officer, the entire order may be vacated. Accordingly, orders incorrectly entered by the clerk may be, and commonly are, vacated under Rule 60(a).

## 2. *The Discharge Order.*

The order granting a chapter 7 discharge is a matter of much consequence and little ceremony. The statute creates a presumption favoring discharge for those who are statutorily eligible for discharge.[16] 11 U.S.C. § 727(a). Its consequence, as pertinent here, is that it voids any judgment at any time obtained to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged. 11 U.S.C. § 524(a)(1).

The procedure for issuing the discharge is fundamentally administrative and ministerial. In the absence of an objection to discharge or waiver of discharge and upon expiration of relevant time periods, the grant of a chapter 7 discharge to a debtor who is an individual is a ministerial act that is automatic. It does not involve the exercise of discretion, and its entry is not independently appealable. Fed.R.Bankr.P. 4004(c). As such, its grant is commonly delegated to the clerk of court for the same reason that the clerk enters certain types of default judgments. *Cf.* Fed.R.Civ.P. 55(b)(1).

The clerk enters the discharge once it can be determined that the debtor is entitled to the discharge. That determination is made by reference to seven objective criteria that are supposed to be readily ascertainable from the record, one of which is that the debtor is an individual.[17] It is a rapid-paced administrative process done in volume and assisted by a computer-based data management system.[18] Mistakes are inevitable. It is easy, for example, to overlook an extension of one of the relevant deadlines. Mistakenly entered discharges are routinely vacated under the authority of Rule 60(a).

## 3. *The Mistake in This Case.*

It is plain that an administrative blunder was committed on two counts when the discharge was issued to Wetherbee in the 1983 case. First, he was not the debtor, and only the debtor can receive a chapter 7 discharge. Second, because the debtor was a corporation rather than an individual, no chapter 7 discharge could be issued at all.

---

**15.** In contrast to this Ninth Circuit rule, other circuits draw a narrower distinction that affords less latitude to the trial judge:

Thus, "[i]f the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; if the judgment captures the original meaning but is infected by error, [ ] the parties must seek another source of authority to correct the mistake."

*Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 984 (7th Cir.1989) (quoting *United States v. Griffin,* 782 F.2d 1393, 1396–97 (7th Cir.1986)).

**16.** The preambular language of the discharge provision is couched in mandatory terms: "The court *shall* grant the debtor a discharge unless— [10 bases omitted]" 11 U.S.C. § 727(a) (emphasis supplied).

Of the ten reasons specified for not granting a chapter 7 discharge, only two are automatic disqualifiers (debtor not an individual and prior chapter 7 or 11 discharge in case commenced within six years before filing of petition). The remainder require judicial determination, generally by way of an adversary proceeding. *Id.;* Fed.R.Bankr.P. 4004(d), 7001(4).

**17.** The other six are: (1) the time fixed to file a complaint objecting to discharge has expired; (2) no such complaint is pending; (3) no judgment sustaining an objection on such a complaint has been rendered; (4) the time fixed for filing a motion to dismiss the case as a substantial abuse (11 U.S.C. § 707(b)) has expired; (5) no such motion is pending; and (6) the debtor has not waived discharge pursuant to 11 U.S.C. § 727(a)(10). Fed.R.Bankr.P. 4004(c).

**18.** The clerk of the Eastern District of California issued 18,563 chapter 7 discharges in 1992 and is constantly exploiting advances in technology to contend with staffing at a level of about 65 percent of the number of employees warranted by the workload standards of the Administrative Office of the United States Courts.

11 U.S.C. § 727(a)(1); Fed.R.Bankr.P. 4004(c).

### (a) *Was the Debtor Wetherbee or Bestway Products?*

The identity of the debtor, contrary to Wetherbee's argument, cannot be conclusively presumed to be the first name listed in the caption "Lee Wetherbee dba Bestway Products, Inc." The first name in the caption may be an important indicator of who is the debtor but creates no more than a rebuttable presumption. Rather, the debtor's identity must be determined on the basis of the petition, schedules, and statements taken as a whole.[19] What is required is that ambiguities be promptly clarified, and corrections made, before anyone is misled. *See* Fed.R.Bankr.P. 1009. Such a correction was made here when an amendment was filed renaming the case "Bestway Products, Inc., formerly Best Trading Co."

The petition, schedules, statements, and lists initially filed in the 1983 case, read as a whole, reveal that from the inception of the case the debtor was the corporation, Bestway Products, not Wetherbee. Any doubts were dispelled once the amendment was filed clarifying that the debtor was Bestway Products and substituting a corporate statement of financial affairs.

It matters not that the clarifying amendment was verified by counsel on the debtor's behalf.[20] Verifications on bank-ruptcy petitions, lists, schedules, and statements may be signed by an agent, including an attorney, subject to the court's power to reject the verification or to require additional verification. *In re Paul A. Closkey, Inc.,* 391 F.2d 919, 920 (3rd Cir.1968); *In re Eastern Supply Co.,* 267 F.2d 776 (3rd Cir.), *cert. denied,* 361 U.S. 900, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959); *Rogers v. DeSoto Placer Mining Co.,* 136 F. 407 (9th Cir.1905); *In re Herzikopf,* 118 F. 101 (S.D.Cal.1902); *In re Bokum Resources Corp.,* 26 B.R. 615, 622 (D.N.M.1982); *In re Raymark Indus., Inc.,* 99 B.R. 298, 300 n. 4 (Bankr.E.D.Pa.1989); 2 L. King, *Collier on Bankruptcy* ¶ 301.15[1] (1992). Even if the verifications were not effective, the amendment documents signed by debtor's counsel would nevertheless stand as statements that are admissible as evidence against Wetherbee in this matter.[21] Fed.R.Evid. 801(d)(2)(C) and (D).

The proceedings in the 1983 case that occurred after the amendment clarifying the identity of the debtor were conducted in the name of Bestway Products. Indeed, the only time that the case actually came before the bankruptcy judge in person was the hearing on the motion for relief from stay, which was litigated in the name Bestway Products.

In that stay relief litigation, the debtor named in the caption and throughout the motion papers was Bestway Products. Counsel for the debtor and for Wetherbee's adversaries participated. Nobody suggest-

---

**19.** Wetherbee misplaces reliance on the bright-line rule suggested by *In re Clem,* 29 B.R. 3 (Bankr.D.Idaho 1982), that would conclusively presume that the first name in the caption is the name of the debtor. The rule advocated in that decision has attracted no following and invites bizarre results. Imagine a caption "ABC Corp. and John Smith" in a case where every other entry in the petition, schedules, statements, and lists unambiguously shows John Smith as the debtor. In such an instance, a correction to the caption is essential, but the debtor is not ABC Corp.

**20.** The verifications required by Federal Rule of Bankruptcy Procedure 1008 were signed "Weldon Ray Reeves attorney for debtor" (amendment) and "Weldon Ray Reeves attorney for Lee Wetherbee" (the new statement of financial affairs). That Wetherbee would ordinarily have

been the signatory for the corporation's statement of financial affairs is evident from his signature on the corporate resolution authorizing the case to be filed.

**21.** The amendment documents signed by the debtor's counsel are evidentiary admissions relevant to this Rule 60(a) motion that the debtor was, and from the inception had been, a corporation. They are statements by a person authorized by the party to make a statement concerning the subject. Fed.R.Evid. 801(d)(2)(C). And they are statements by the party's agent concerning a matter within the scope of the agency made during the existence of the relationship. Fed.R.Evid. 801(d)(2)(D); *In re Applin,* 108 B.R. 253, 29 Fed.R.Evid.Serv. 779 (Bankr.E.D.Cal. 1989); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 801(d)(2)(C)–(D) (1992); B. Russell, *Bankruptcy Evidence Manual* § 801.22 (1991).

ed that Wetherbee was the debtor. And the order resolving that contested matter showed that Bestway Products was the debtor.[22]

Moreover, Wetherbee subsequently filed an individual case in 1985, represented by the same counsel, in which he declared under penalty of perjury that he had not previously been a debtor.[23] And he filed an individual case in 1991 in which he swore that the 1985 case was his only previous bankruptcy.[24] His story did not change until the adversary complaint was filed in 1992. It also is significant that neither Wetherbee's complaint in the adversary proceeding that precipitated this Rule 60(a) motion nor his declaration in support of his motion for summary judgment mentions the 1985 case.[25]

In this instance, the totality of the record demonstrates that Wetherbee never was the debtor in the 1983 case that was initially captioned "In re Lee Wetherbee dba Bestway Products, Inc." The debtor was Bestway Products, Inc., a California corporation. The clerk blundered in entering a discharge in favor of someone who was not a debtor.

(b) *Ineligibility of Corporation for Chapter 7 Discharge.*

■ It is a crystalline rule that a discharge cannot be entered in a chapter 7 case in which the debtor is not an individual. 11 U.S.C. § 727(a)(1). Entry of the discharge in violation of that rule was a

mistake in the execution of a ministerial task. The determination to enter the discharge is based on an administrative review of the record according to a checklist to confirm that the prerequisites for discharge are present. The mistake resulted from overlooking the fact that the debtor was a corporation, which is apparent from the face of the record as it existed when the discharge order was prepared. The clerk blundered by entering a discharge in a chapter 7 case in which the debtor was not an individual.

(c) *Equitable Considerations.*

■ The one limitation on correcting an error under Rule 60(a) is that reliance on the erroneous judgment can lead to changes in position that are so substantial as to make it inequitable to grant relief. That is not the situation here. Not only did Wetherbee ignore the discharge, he twice subsequently represented to the court under oath that he had not been a debtor in a 1983 bankruptcy case. If there is a material change of position, it is that of Wetherbee's adversaries who relied on the amendment in the 1983 case clarifying that Bestway Products was the debtor and who did not then file a nondischargeability action. The equities soundly favor correcting the error.

4. *Rule 60(b)(4).*

■ There is an independent, alternative basis for vacating the discharge order

---

**22.** If Wetherbee were the debtor, granting relief from stay to permit civil litigation against Wetherbee on a business dispute in a nonbankruptcy forum would have made no sense. The theory now urged, that the stay was lifted to have the claim liquidated in state court, is contradicted by the "no asset" status of the bankruptcy case that would make liquidation of a claim useless and does not account for the court's refusal to permit the litigation to continue against Bestway Products.

If Wetherbee was to be discharged, and the deadline for filing complaints challenging dischargeability of debts (March 16, 1983) having passed before the motion was heard, the result of any litigation would have been a judgment void ab initio against Wetherbee. 11 U.S.C. § 524(a)(1). This is not a situation in which Wetherbee was a necessary or indispensable party in litigation in which someone else would be liable on the debt. *See* 11 U.S.C. § 524(e).

In contrast, the court's action on the stay makes perfect sense if Bestway Products was the debtor.

**23.** *In re Lee and Pamela Wetherbee,* Case No. 285–02771–A–11, Statement of Financial Affairs for Debtor Engaged in Business, question 9 (filed July 29, 1985).

**24.** *In re Marvin Lee Wetherbee,* Case No. 91–23191–C–11, Statement of Financial Affairs for Debtor Engaged in Business, question 10 (filed April 26, 1991).

**25.** Those papers are very carefully worded—in a manner that warrants adverse construction. For example, Wetherbee carefully avoids saying "I was the debtor in the 1983 case." Rather, he says "I filed a petition for Chapter 7 captioned LEE WETHERBEE dba BESTWAY PRODUCTS, INC."

in this instance that is apparent from the uncontested facts. The discharge order is void and may be vacated under Rule 60(b)(4).

Such action must be taken "within a reasonable time," which generally means no time limit. Fed.R.Civ.P. 60(b)(4); *Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.),* 759 F.2d 1440, 1447–48 (9th Cir.1985); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[4] (2d ed. 1992); 11 C. Wright & A. Miller, *Federal Practice & Procedure* §§ 2862, 2866 (1992).

A judgment is commonly regarded as void when "the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law." *Center Wholesale,* 759 F.2d at 1448; 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2862 at 198–200 (1992). The vagueness of the concept of "void" has been criticized and is subject to qualification in light of the implications of every court's jurisdiction to determine its own jurisdiction. *See In re Edwards,* 962 F.2d 641, 643–44 (7th Cir.1992); 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.-25[2] (2d ed. 1992); 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2862, at 201 (1992).

Despite the uncertain meaning of void, it is accepted that if the miscarriage is sufficiently egregious, Rule 60(b)(4) applies. *Edwards,* 962 F.2d at 644; *Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 481–82 (9th Cir.1989); *Center Wholesale,* 759 F.2d at 1448–51. The line between "jurisdictional error" and "mere error" may be fuzzy, but it is there. *See also* Restatement (Second) of Judgments § 11 cmt. e and § 69 cmt. b.[26]

The discharge order is void in this instance because it was entered in a chapter 7 case in which the debtor was not an individual. The Bankruptcy Code flatly forbids such a discharge. 11 U.S.C. § 727(a)(1). And it was a discharge issued to a person other than the debtor in contravention of the requirement that chapter 7 discharges only be issued to the debtor.[27] *Id.* Since no court has the power to grant such a discharge, the order was issued without subject-matter jurisdiction and is void.

If Wetherbee's theory of the case were to be accepted, then there would also be a notice issue that rises to the level of a denial of constitutional due process and that requires correction under Rule 60(b)(4). *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Center Wholesale,* 759 F.2d at 1448–50. The ambiguity as to whether Wetherbee or his corporation was the debtor created a dilemma for the plaintiffs in the 1978 lawsuit. If Wetherbee was the debtor, then they would be required to file a nondischargeability action by March 16, 1983, in order to have their claim survive a discharge. Fed.R.Bankr.P. 4007(c). The dilemma resolved itself, however, when the amendment was filed on February 15, 1983, clarifying that Bestway Products was the debtor. Accordingly, no nondischargeability action was filed because no discharge could be entered. The parties and the courts thereafter proceeded, for more than nine years, on the basis that Bestway Products was the debtor.

If Wetherbee really was the debtor and if a nondischargeability action should have

---

**26.** As noted in the Restatement:

[T]here are decisions holding all kinds of serious procedural errors to be "jurisdictional." Many if not all of these decisions can be explained as mechanisms to give relief to an applicant who has sought relief tardily but in good faith. The modern decisions, moreover, generally display realism if not complete candor in their manipulation of the term "jurisdiction."

Restatement (Second) of Judgments § 69 cmt. b.

**27.** In contrast, it may be permissible in extraordinary circumstances to approve the functional equivalent of a discharge for specific debts for someone other than the debtor pursuant to an order confirming a chapter 11 plan of reorganization. *Cf. United States v. Energy Resources,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

been filed, as he now claims,[28] then this sequence of events would not constitute "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections [to dischargeability]." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. It is so far short of the mark that the Due Process Clause would be violated.

Wetherbee's theory that a nondischargeability action would now be time barred also would call into question the constitutionality of the application of the statute of limitations for dischargeability actions under 11 U.S.C. § 523(c). The limitations period is prescribed by rule, not by statute. Fed.R.Bankr.P. 4007(c). Retroactive extensions of the deadline are forbidden by another rule. Fed.R.Bankr.P. 9006(b)(3). The courts have not heretofore forged an equitable tolling doctrine. Such tolling probably would be required to solve the due process problem noted above.

These factors compel the conclusion that Rule 60(b)(4) applies in this case.

Nor is there any unfairness in such application. As noted above, nothing in the record suggests that anybody ever relied on the existence of the discharge. Certainly, Wetherbee did not rely on it in the nine years before he raised the question when he filed his adversary proceeding in 1992. Nor did any of his creditors. No rights vested in the faith of the discharge order. Instead, plaintiffs in the 1978 lawsuit relied on the absence of a discharge when they relied on the amendment in the 1983 case clarifying that the debtor was Bestway Products.

Accordingly, the discharge of Wetherbee is void and can be vacated pursuant to Rule 60(b)(4).

### 5. *Considerations of Judicial Finality.*

■ Rule 60(a) expressly permits the correction to occur "at any time"—even many years later. Rule 60(b)(4) is similarly construed. Nevertheless, the passage of ten years warrants brief consideration of the competing policy favoring judicial finality.

One pronounced judicial policy favors bringing a controversy to an end. An equally pronounced policy favors a correct decision in each case. The former permits errors to be placed beyond correction; the latter counsels caution in treating an error as beyond correction. The tension between the two produces the conclusion that "the doctrine of judicial finality is relative and contextual." 6A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.02 (2d ed. 1992).

In this instance, condoning an incorrect judgment would frustrate substantial justice and would make it an instrument of fraud. 9 L. King, *Collier on Bankruptcy* ¶ 9024.03 (1992). Nobody paid any attention to the offending 1983 discharge until it surfaced nine years and two bankruptcies later as a device to attempt to block enforcement of the judgment lien.

### 6. *"Judicial Notice" of the 1985 Case.*

■ In the course of this matter, attention has been paid to Wetherbee's schedules and statement of financial affairs filed in his 1985 case, including his averment that he had not previously been a debtor in a bankruptcy case, even though neither party made the schedules and statement part of the record. The movant apparently did not know about the statement. Wetherbee chose not to mention it.[29] The court

---

**28.** Wetherbee argues:
The defendant [movant] now argues that because the debtor did not tell it that it needed to file a dischargeability action to determine whether the liquidated claim was discharged, the debtor is not entitled to the relief of the bankruptcy which he had filed.
The problem with the argument is that the error was that of the defendant. The defendant knew that Wetherbee was under the protection of the bankruptcy [sic] Court ... [sic]

it [sic] requested relief to liquidate its claim. The defendant did not realize that liquidation of a claim was not the same as non-dischargeability of a claim. it [sic] error should not, in law or equity, be borne by the debtor.
Response To Motion Under FRCP 60(a), at 2–3 (Jan. 20, 1993).

**29.** The fact of the existence of the 1985 case is in the record. Buried in the voluminous exhibit containing the petition, schedules, and state-

took judicial notice of the court records in the 1985 case. By what right and on what authority?

It has become a commonly-accepted practice to take "judicial notice" of a court's records. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 201[03] at 201–35 to –40 (1992). The practice is particularly useful in bankruptcy litigation in which individual adversary proceedings and contested matters, each of which is procedurally distinct and has its own record, all occur within, and are affected by, the context of the parent bankruptcy case. *See In re Applin*, 108 B.R. 253, 257–58 (Bankr. E.D.Cal.1989). The practice is accepted in the Ninth Circuit. *E.g., O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.),* 887 F.2d 955, 957, 958 (9th Cir.1989) (bankruptcy); *Commodity Futures Trading Comm'n v. CoPetro Marketing Group, Inc.,* 680 F.2d 573, 584 (9th Cir.1982) (Commodity Exchange Act). And it is accepted in other circuits. *E.g., United States v. Wood,* 925 F.2d 1580, 1582 (7th Cir.1991) (bankruptcy); *Kowalski v. Gagne,* 914 F.2d 299, 305–06 (1st Cir.1990) (tort); *MacMillan Bloedel Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir.1985) (contract); *Coney v. Smith,* 738 F.2d 1199, 1200 (11th Cir.1984) (search and seizure).

Confusion, however, abounds about just what is being done when judicial notice is taken of court records and which uses of such records are legitimate. Commentators have been critical of such notice, especially where disputable facts might be made indisputable. *See* 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* § 5106 (1992 Supp.); B. Russell, *Bankruptcy Evidence Manual* § 201.5 (1991).

The taking of "judicial notice of court records" is actually a convenient shorthand for two distinct concepts—importing the documents into the record of the matter at hand and establishing their authenticity. Importing the documents into the record really is not a matter of judicial notice at all; it is a matter of offering evidence. When done by the court, it is a manifestation of the court's unquestioned power to call and interrogate witnesses. Fed. R.Evid. 614; 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 614[01] (1992); 9 J. Wigmore, *Evidence* § 2484 at 277 (Chadbourne Rev.1981).

The act of taking judicial notice of the records of the 1985 case was taken on the basis that the accuracy of the fact that the papers were in the official court file of that case could not reasonably be questioned. Fed.R.Evid. 201(b)(2). Such notice is a matter as to which the court has discretion. Fed.R.Evid. 201(c). It was done in open court at the time of the hearing on the Rule 60(a) motion. Both parties had an opportunity at that time to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.[30] Fed.R.Evid. 201(d). The debtor had placed his entire bankruptcy history in issue but had conspicuously failed to mention the 1985 case in the argument and declarations. One who operates at the fringe of permissible advocacy invites judicial scrutiny.[31]

---

ment of financial affairs for the 1991 case that Wetherbee proffered as an exhibit in this adversary proceeding is the answer to question 10 in the statement of financial affairs, which states that Wetherbee had been a debtor in Case No. 285–02771.

**30.** Nor should it have come as a surprise. The case was listed on the debtor's statement of financial affairs that the debtor (obscurely) made part of the record in the adversary proceeding. The intention to retrieve Wetherbee's records from the court's archives was announced when the court denied Wetherbee's earlier motion for summary judgment, because,

inter alia, the original file was needed to determine with precision which document the judge (now retired) had actually signed and where someone else had used his signature stamp.

**31.** *Johnson v. United States,* 333 U.S. 46, 54, 68 S.Ct. 391, 395, 92 L.Ed. 468 (1948) ("Federal judges are not referees at prize fights, but functionaries of justice") (Frankfurter, J., dissent); *United States v. Marzano,* 149 F.2d 923, 925 (2d Cir.1945) ("A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he cannot discharge by remaining inert") (L. Hand, J.).

The purpose of taking judicial notice in this instance was to establish that the documents from the 1985 case are genuine without going through the steps normally needed to authenticate documents. Fed.R.Evid. 902, 1005. In practical effect, such judicial notice of the court's own records is the equivalent of a certificate regarding custody by a judge of a court of record of the district in which the record is kept. Fed. R.Civ.P. 44(a)(1).[32] Of the various uses of judicial notice of records, this is the least controversial.[33]

The fact that the documents are genuine does not mean that the court can automatically accept as true the facts contained in such documents. Unless they relate to a preliminary question of admissibility as to which the rules of evidence (other than privilege) do not ordinarily apply, or are not adjudicative facts, statements therein must be admissible under the Federal Rules of Evidence.[34] Fed.R.Evid. 104(a), 201(a). *See Applin,* 108 B.R. 253 at 257–58.

In this instance, the statement is offered against Wetherbee and is his own statement. Accordingly, it is not hearsay. Fed. R.Evid. 801(d)(2). Because it pertains directly to the issue of whether he was the debtor in the 1983 case, it is relevant and admissible.

### 7. *Procedure for Rule 60 Motions in Closed Cases.*

 A Rule 60(a) motion is a direct attack rather than a collateral attack and properly should be made in the case in which the correction would be made. That case is the 1983 case, *In re Bestway Products, Inc.,* which was closed. It needs to be reopened for the purpose of making the correction. A case may be reopened in the court in which such case was closed for several reasons, including cause. 11 U.S.C. § 350(b). A Rule 60(a) motion is appropriate cause for reopening the case.[35]

 A Rule 60(b)(4) motion[36] can be either made by way of direct attack in the original case in which the order in question was entered or by way of collateral attack in some other proceeding. 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.41 (1992). Here, the motion was properly made as a collateral attack made in the adversary proceeding that seeks collateral

---

**32.** Federal Rule of Civil Procedure 44 applies in all bankruptcy matters by virtue of Federal Rule of Bankruptcy Procedure 9017:

> The Federal Rules of Evidence and Rules 43, 44 and 44.1 F.R.Civ.P. apply in cases under the Code.

Fed.R.Bankr.P. 9017.

**33.** The second recognized use for judicial notice of court records is taking as true the recording of judicial acts contained in the record. Insofar as judicial notice is supposed to be conclusive of the fact noticed, commentators suggest that the better practice is admit the record under the official records exception to the hearsay rule so that evidence of any inaccuracy in the record may be established. 21 C. Wright & K. Graham, *Federal Practice & Procedure: Evidence* § 5106 (1992 Supp.).

The third, and widely-criticized, use of judicial notice of court records is to take as conclusively established extrajudicial facts that are mentioned in the records, thereby depriving a party of the right to dispute the facts and eviscerating the doctrine of collateral estoppel.

**34.** The doctrines of collateral estoppel, res judicata, and stare decisis may also pertain. *See, e.g., M/V American Queen v. San Diego Marine* *Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir.1983) ("As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, *without formal introduction of evidence,* facts essential to support a contention in a cause then before it. But a court can properly notice a doctrine or rule of law from such prior case and apply that principle under the theory of stare decisis") (emphasis supplied, citations omitted).

**35.** The Rule 60(a) motion was filed in Adversary Proceeding No. 92–2407 and will now be deemed made in the 1983 case. Wetherbee can hardly claim to be prejudiced by such action in this adversary proceeding in which he seeks a declaratory judgment regarding the effect of the specific order that is the subject of the Rule 60(a) motion.

**36.** Such a motion is deemed to be stated in the motion papers in this instance, despite the lack of reference to Rule 60(b)(4), pursuant to the mandate to construe the rules to secure just, speedy, and inexpensive determination of every case and proceeding. Fed.R.Bankr.P. 1001. The parties agree that if Wetherbee was not the debtor, there can be no chapter 7 discharge.

enforcement of the discharge order.[37]

An appropriate order will issue.

---

**37.** In view of the transfer to the 1983 case of the Rule 60(a) component of the motion, the Rule 60(b)(4) component will also be deemed to have been made in the 1983 case.