**In re Paul Lawrence BROWN and Joyce Marie Brown, Debtors.**

**No. 02–63073–AER13.**

United States Bankruptcy Court,
D. Oregon.

May 24, 2006.

Eric W. Olsen, Kevin D. Swartz, Salem, OR, for Debtors.

MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court on the Chapter 13 Trustee's (Trustee) motion to reinstate the "best interest number" from the original confirmed plan. At hearing, the parties stipulated to certain facts. After the hearing, the matter was briefed and is now ripe for decision.

*Facts:*

The stipulated facts (plus those of which the court may take judicial notice) are as follows:

This Chapter 13 case was filed on April 26, 2002 by Paul and Joyce Brown (Debtors). Debtors' original Chapter 13 plan was dated May 13, 2002. Creditor Ronald D. Daugherty (Daugherty) filed an objection to confirmation of the plan. The objection was resolved by an agreement that the "best interest number" under 11 U.S.C. § 1325(a)(4)[1] would be $6,000.[2] Paragraph 11 of the Order Confirming Plan entered September 25, 2002, amends ¶ 2(f) of the plan to so provide.

On or about June 17, 2003, Trustee received from Debtors' counsel a proposed modified plan dated June 12, 2003. The proposed modified plan: 1) reduced the monthly payments from $150 to $50; 2) *substituted "n/a" for $6,000 in ¶ 2(f) for the best interest number;* 3) reduced the dividend to unsecured creditors from approximately 2% to approximately 0%; and 4) reduced the plan term from 45 months to 36 months. The transmittal letter which accompanied the proposed modified plan stated in pertinent part: "[t]he reason for the modification is that Debtor(s) income has decreased and expenses have increased." Trustee did not receive a separate summary of the modifications to the plan, or any explanation as to why the best interest number was deleted. Debtors concede the best interest number was inadvertently omitted from the modified plan.

After receiving the transmittal letter, Trustee informed Debtors' counsel that he had no objection to the proposed modified plan. This was an error by Trustee.

A Notice of Post–Confirmation Modification of Plan, and the modified plan were served on parties in interest on July 10, 2003, and filed on July 14, 2003. In paragraph 5 of the Notice, Debtors' counsel certified that "PRIOR to the filing of this plan with the Clerk, a separate summary of the modifications, .. and any other pertinent information was sent to the trustee . . . ." This certification was false.[3] There were no objections to the modified plan.

On December 16, 2003, Trustee filed a motion to dismiss because he had not received Debtors' 2002 federal income tax refund in the amount of $1,688, as required by the modified plan. The motion to dismiss prompted Debtors to file a second modified plan dated December 18, 2003. Paragraph 10 of the second modified plan provided: "Debtor(s) to pay trustee $1,688.00 on or before 6/30/04 representing 2002 IRS tax refund." The "best interest number" remained "n/a." This time, Trustee caught the "best interest problem" and objected to the second modified plan. Debtors then withdrew the second modified plan.

On February 23, 2004, Trustee received $1,688 from Debtors. This "repaid" the 2002 federal income tax refund. Accordingly, Trustee withdrew his motion to dismiss.

On March 8, 2004, Trustee's counsel wrote Debtors' counsel regarding the "best interest problem." The letter confirmed a phone call between the two the previous week, wherein Debtors' counsel stated

---

1. All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated

2. Section 1325(a)(4)'s requirement that unsecured creditors receive under a Chapter 13 plan at least as much as they would in a Chapter 7 liquidation is known as the "best interest" (or sometimes, "best interests") test.

3. The court is not finding that the debtors or their counsel acted intentionally or intended to deceive anyone. Rather, it appears that the incorrect notice was the result of inadvertence.

Debtors would agree to reinstate the $6,000 best interest number in accordance with the terms of the plan as originally confirmed. The letter provided that Trustee's counsel would be happy to prepare a stipulated order, but that the amount of the plan payments needed to be tied down first, as there was a feasibility issue with a reinstated $6,000 best interest number, (based on the $50 per month plan payments, as provided in the modified plan), unless Debtors' 2003 tax refunds were similar to their 2002 tax refunds.

Debtors' 2003 tax refunds generated only $156, thus, the feasibility problem remained unsolved, and was not resolved in 2004, as Debtors did not receive tax refunds for 2004.

Trustee's present motion was filed on June 30, 2005. Debtors have not yet paid $6,000 to their unsecured creditors and refuse to do so.

*Discussion:*

Debtors argue they have completed the modified plan, and that a discharge should be entered. Trustee seeks to "reinstate" the original $6,000 best interest figure into the modified plan, upon which additional plan payments would be due.

The court will grant Trustee's motion on three (3) alternative grounds.

*Defective Notice:*

■ The modified plan was noticed on July 10, 2004. Since there was no timely objection thereto, it would normally have become the plan. *See,* § 1329(b)(2).[4] However, this District's Local Bankruptcy

Rule 3015–1.C.3.b. requires the proponent of a post-confirmation modified plan to serve the documents relating thereto as required by local form "Notice of Post Confirmation Modified Plan" (LBF # 1355.10). The Notice at ¶ 5 requires that a separate summary of the modifications and "any other pertinent information" be served on the trustee fourteen (14) days before filing the modified plan. Debtors concede they failed to meet this requirement, although they falsely certified on the Notice (through counsel) that they had. This failure is material and fatal to the effectiveness of the notice. Without effective notice, the modified plan did not "become the plan" under § 1329(b)(2). It, therefore, remains pending. *See, In re Bagby,* 218 B.R. 878 (Bankr.W.D.Tenn.1998) (proposed modifications were not approved because notice requirements of FRBP 3015(g) were not complied with).

In light of the facts before the court, it would be futile to hold a hearing on the modified plan as presently drafted. Trustee would raise the same objection he raises here. Given Debtors' admission that deletion of the $6,000 best interest amount was inadvertent, the objection would be sustained. Debtors would, therefore, be forced to further modify it to re-insert the $6,000 best interest number.[5] In the alternative, assuming arguendo that the modified plan "became the plan" under § 1329(b)(2), it cannot stand as written.

4. Section 1329(b)(2) provides:
 The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
 The court's Notice of Post Confirmation Modified Plan (LBF 1355.10) notes § 1329(b)(2)'s effect and also provides that "the terms of the previously entered Confirmation Order shall continue to apply except

to the extent such terms are inconsistent with the modified plan."

5. Debtors have been performing under the modified plan for close to three years; therefore withdrawing it, in favor of the original plan is not an option, as the original plan's monthly payment obligation, given the passage of time, renders it no longer feasible.

600

*Reformation:*

 Although not labeled as such, Trustee's motion may be construed to seek to "reform" the modified plan. A modified plan, which has "become the plan" under § 1329(b)(2), is in essence, a new confirmed plan. *Max Recovery, Inc. v. Than (In re Than),* 215 B.R. 430, 434 (9th Cir. BAP 1997). Confirmed Chapter 13 plans are essentially contracts or consent decrees, *Id.* at 435; *In re Harvey,* 213 F.3d 318, 321 (7th Cir.2000), and would presumably be subject to a "reformation" claim. *See, Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.),* 221 B.R. 298, 305 (2nd Cir. BAP 1998) (there, the court considered, then rejected, reformation of a Chapter 11 plan, finding no mutual mistake). Being in the nature of a contract, the plan's interpretation is governed by the laws of the situs state (here, Oregon). *C.f. Hillis Motors, Inc. v. Hawaii Automobile Dealers' Assoc.,* 997 F.2d 581 (9th Cir.1993) (interpretation of a Ch. 11 plan is governed by the law of the situs state).

 When a court is asked to reform a contract, it is upon the request of a party who believes the final writing does not accurately reflect the parties' actual agreement.

"The province of reformation is to make a writing express the agreement that the parties intended it should. [R]eformation is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing. Their mistake is one as to expression—one that relates to the content or effect of the writing that is intended to express their agreement—and the appropriate remedy is reformation of that writing properly to reflect their agreement."

*Pioneer Resources, LLC v. D.R. Johnson Lumber Co.,* 187 Or.App. 341, 370, 68 P.3d 233, 250 (2003) (internal quotations and citations omitted).

 In general, a party seeking reformation of a contract has the burden to establish the following by clear and convincing evidence: (1) an antecedent agreement (that was omitted from the final contract), to which the contract can be reformed; (2) a mutual mistake, or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence. *Aero Sales, Inc. v. City of Salem,* 200 Or.App. 194, 203, 114 P.3d 510, 515 (2005).

As to the first prong, Daugherty's objection to the original plan was resolved by an agreement that the "best interest number" would be $6,000. Paragraph 11 of the Order Confirming Plan entered September 25, 2002, memorializes this agreement, which could be construed as the "agreement of the parties" to which the modified plan should be "reformed."

As to the second prong, Debtors have admitted they inadvertently omitted the $6,000 figure in the modified plan, thus conceding a drafting error. Trustee concedes his own error in not correcting this error. Accordingly, there has been a mutual mistake.

 As to the third element:
The term 'gross negligence,' at least as it is used in the reformation context, is not well defined in the case law. Certainly, not all inattentive conduct by a party seeking reformation will bar equitable relief. Rather, conduct, in order to bar reformation, must go beyond mere oversight, inadvertence, or mistake and, instead, must amount to a degree of inattention that is inexcusable under the

circumstances. The inquiry is necessarily fact-specific.

*Pioneer Resources, supra* at 373, 68 P.3d at 251( internal quotation omitted).

[A] party's negligence in failing to read the writing does not [by itself] preclude reformation if the writing does not correctly express the prior agreement.

The question, then, is whether a party's failure to detect the objectionable material in a particular case amount[s] to a degree of inattention that is inexcusable under the circumstances, where such circumstances include the existence of previous agreements between the parties relating to the same transaction. The significance of the existence of an antecedent agreement is closely connected to the concept of reliance. When two parties have an agreement that antedates their written agreement but relates to the same basic transaction, that previous agreement and the shared understandings with respect to that agreement help shape the parties' expectations as to the later written agreement. As a result, oversight in failing to read documents that might correct a party's mistaken understanding of some aspect of the transaction may, rather than constituting gross negligence precluding reformation, be excusable neglect, arising from the party's reliance on the terms as expressed in the previous agreement between the parties.

*Id.* at 373–74, 68 P.3d at 251–52 (internal quotations and citations omitted).

■ Here, there has been a lack of gross negligence by Trustee. First, there was a prior understanding, as evidenced by the resolution of the Daugherty objection in the confirmation order. As such, Trustee could likely assume the amended plan contained the $6,000 figure. Second, Trustee was not given the amendments separately beforehand as was required by local rule. Certainly nothing in the transmittal letter accompanying the modified plan indicated the best interest number had been changed.[6]

*Vacating/Revoking the Effect of § 1329(b)(2):*

■ Again, assuming *arguendo*, the modified plan "became the plan" under § 1329(b)(2), Trustee's motion could also be read as an attempt to undo this effect. This is analogous to vacating or revoking confirmation. Trustee's motion is based on "mistake," citing § 105(a), FRBP 9024 and FRCP 60.

In *ECMC v. Robinson (In re Robinson)*, 293 B.R. 59 (Bankr.D.Or.2002), a student loan creditor sought to set aside a confirmation order based on inadvertence/excusable neglect in failing to object to a confirmation order which amended the plan to provide for a discharge of the loan upon the plan's completion based on undue hardship. This court held that confirmation orders could only be revoked on very limited grounds, including "mistake" by the court. The court held, in essence, that the excusable neglect, inadvertence etc. grounds of FRCP 60(b),[7] made applicable

---

6. "Reforming" the modified plan to insert the $6,000 best interest amount would not require that it be re-noticed, because the $6,000 amount is more favorable to creditors than the modified plan actually noticed.

7. FRCP 60 provides in pertinent part:

(a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders....

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a

by FRBP 9024,[8] had no application within the context of setting aside or revoking confirmation orders.

Here, Trustee urges the court to correct a "mistake," citing *Cisneros v. U.S. (In re Cisneros),* 994 F.2d 1462 (9th Cir.1993). In *Cisneros* the court clerk's office's routine practice was to notify the Chapter 13 trustee of all timely filed proofs of claim. The IRS had filed a timely claim, but the trustee did not receive notice of this claim from the clerk's office. After sixteen (16) months of plan payments, the trustee mistakenly reported that all claims had been paid. Based on that report, the bankruptcy court entered a discharge under § 1328(a) without notice to creditors or a hearing. In fact, the IRS' allowed claim had not been paid. The IRS sought to revoke the discharge order. The court framed the issue as to whether the discharge could be revoked based on "mistake". The court held that FRBP 9024 could co-exist with § 1328(e) [9] at least to correct a mistake of fact by the court. The court noted that there is "no reason to believe that Congress intended section 1328(e) to prevent the bankruptcy court from correcting its own mistakes." *Id.* at 1466.

> The order of discharge was entered by the bankruptcy court under a misapprehension as to the facts of the case. Had the court been apprised of the actual facts, it would never have entered the order.

*Id.* at 1467. In *Ford v. Ford (In re Ford),* 159 B.R. 590 (Bankr.D.Or.1993), the court interpreted *Cisneros'* holding, "as a reaffirmation of a court's inherent power to correct its own clerical errors." *Id.* at 593. In *Robinson,* this court adopted *Ford's* interpretation of *Cisneros. Id.* at 65. A few years later the Bankruptcy Appellate Panel did the same in the § 1330 context. *Duplessis v. Valenti (In re Valenti),* 310 B.R. 138, 147 (9th Cir. BAP 2004).

Trustee distinguishes the "mistake" here, with that in *Robinson.* In *Robinson,* this court stated:

> Here, the confirmation of Debtor's Chapter 13 plan cannot be revoked based upon a mistake of fact, such as

---

party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation . . . .

8. FRBP 9024 provides in pertinent part:

Rule 60 F.R.Civ.P. applies in cases under the Code except that . . . (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

9. Section 1328(e) provides:

On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if—
(1) such discharge was obtained by the debtor through fraud; and
(2) the requesting party did not know of such fraud until after such discharge was granted.

existed in *Cisneros*, as the true state of the facts was placed upon the record in open court, and the court confirmed the debtor's plan after being satisfied that Plaintiff (or at least Plaintiff's predecessor in interest) would be specifically served with the order of confirmation and given an opportunity to object.

*Id.* at 64–65.

Trustee argues that here the true state of the facts were not placed upon the record in open court, and that the court made a mistake and would not have given effect to the modified plan if it had been aware that: 1) the original plan had been confirmed with a $6,000 best interest number which was the result of a negotiated settlement; 2) the failure to include the best interest number in the modified plan was the result of an inadvertent error; and 3) Debtors had not alerted the Trustee to the fact that the best interest number was deleted from the modified plan as required by the court's local rules and forms.

Under *Ford, Robinson,* and *Valenti, supra,* the inquiry is whether the omissions specified by Trustee can be construed as "clerical errors." Taking them in turn, the court's failure to compare the best interest number in the modified plan with the number in the original plan, was not a "clerical error." The court does not, as a matter of course, compare the original plan with a proposed post confirmation modified plan and then object *sua sponte.* Section 1329(b)(2), puts the onus on a party in interest to object.

Next, whether Debtors' inadvertent deletion of the best interest amount was a "clerical" error is a closer question. It was an error in draftsmanship, but it was

not the court's error and did not go to administrative or ministerial tasks, but rather to the substance of the plan. On the other hand, implicit in the court's permitting a post confirmation modified plan to be noticed to creditors is the assumption that the document means what it purports to say. Here, the modified plan did not, which arguably caused a "misapprehension" on the court's part like the one in *Cisneros.* *Cisneros* allows that an "error" by the court may be caused by another party's error.

In any case, Trustee's third argued omission, that is counsel's false certification, was a "clerical" error. It involved an "administrative lapse" akin to the trustee's false report in *Cisneros.* If the court had known the certification was false, that is, Trustee had not received a separate summary of the modifications beforehand, the court would not have permitted the modified plan to be noticed.[10]

Nullifying (i.e. revoking or vacating) the effect of § 1329(b)(2) would ordinarily mean the modified plan would go forward on the merits. Here, as discussed above, it would be futile to convene a hearing on the modified plan as drafted.

*Timeliness:*

Trustee filed the present motion on June 30, 2005, approximately twenty-three and a half (23.5) months after the modified plan was noticed. Debtors raise timeliness issues, advocating either the one year bar of FRCP 60(b), or the 180 day bar of § 1330(a).

 As noted above, the modified plan never "became the plan" under § 1329(b)(2). As such, it is still pending and Trustee's de facto objection thereto may be raised.

---

**10.** Trustee makes a passing reference to FRCP 60(b)(6) as a ground for relief. Because the motion is being granted on other grounds, the court need not address this argument.

▮▮▮ In the alternative, even if the modified plan became the plan, Trustee's claim for its reformation is timely. "Reformation" is governed by Oregon law. Under Oregon law, a "reformation" claim is subject to the ten (10) year statute of limitations of ORS 12.140. *Woodriff v. Ashcraft*, 263 Or. 547, 553, 503 P.2d 472, 475 (1972).[11] A plaintiff may still be guilty of laches even though the applicable statute of limitations has not yet run if substantial prejudice to the defendant's position has resulted from the plaintiff's delay. *Id.* Here, Debtors have not shown substantial prejudice.

▮▮▮ As to vacation/revocation, FRCP 60(a) specifically covers "clerical mistakes," providing in pertinent part:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.[12]

If the "mistake" in this case is classified as one under FRCP 60(a), that rule allows correction "at any time." FRBP 9024 generally makes FRCP 60 applicable in bankruptcy. However FRBP 9024(3) provides that "a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1330 (i.e. 180 days after confirmation)." Even assuming FRBP 9024(3)'s limitation applies to a motion to "undo" the effect of § 1329(b)(2), as here,

the Rule's temporal limitation has been held, in an analogous context, inapplicable to clerical mistakes. *In re Bestway Products, Inc.*, 151 B.R. 530, 534, n. 11, (Bankr. E.D.Cal.1993), *aff'd*, 165 B.R. 339 (9th Cir. BAP 1994)(TABLE).[13]

*Bestway* held the only limitation to correcting "clerical errors" under Rule 60(a) is when reliance on the erroneous judgment lead to a change in position that was so substantial so as to make it inequitable to grant relief. *Id.* at 537. This resembles "laches" as discussed above. Debtors here, do not argue any such change in position, nor does the record support proof of same.

Alternatively, *Robinson, Ford,* and *Valenti, supra,* acknowledge a court's "inherent" ability to correct its own mistakes. In *Anwiler v. Patchett (In re Anwiler)*, 958 F.2d 925 (9th Cir.1992), the court recognized such power under § 105(a). There, the bankruptcy court sent out conflicting deadlines for creditors to file §§ 523 and 727 complaints. The court's inherent power was used to override the sixty (60) day limitations periods in FRBPs 4004(a) and 4007(c), *despite* FRBP 9006(b)(3)'s prohibition on enlargement. Also, in *Bestway, supra,* the court used "inherent power" as an alternative ground to vacate a discharge order more than ten (10) years after entry, *Id.* at 534, n. 12.

Based on the above, this court concludes that Trustee' motion is timely.

---

11. O.R.S. 12.140 provides:

> An action for any cause not otherwise provided for shall be commenced within 10 years.

12. "[U]nder Rule 60(a), a court has 'very wide latitude in correcting clerical mistakes in a judgment.' " *Korea Exchange Bank v. The Hanil Bank, Ltd (In re Jee)*, 799 F.2d 532, 535 (9th Cir.1986) (internal quotation omitted).

13. In *Bestway*, a judgment creditor sought revocation of a discharge order ten (10) years after its entry (and consequent case closure) based on a clerical mistake. The court held the motion was timely, despite FRBP 9024's limitation on filing "a complaint to revoke a discharge in a chapter 7 liquidation case" "only within the time allowed by § 727(e) [one year, § 727(e)(1), or later of one year or case closure § 727(e)(2)]." *Id.* at 534, n. 11.

*Conclusion:*

In the final analysis, Debtors seek to take advantage of their own drafting error, (compounded by a failure to follow the local rules), to the detriment of unsecured creditors. This, they cannot do. For the reasons discussed above, Trustee's motion will be granted and the modified plan amended to reflect a best interest number of $6,000.

This opinion constitutes the court's findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.