Argued and submitted July 17, 2013, affirmed February 11, petition for review denied September 10, 2015 (357 Or 743)

5 STAR, INC.,
an Oregon corporation,
Kevin Rains and Mitzi Rains,
*Plaintiffs-Appellants,*

*v.*

ATLANTIC CASUALTY INSURANCE COMPANY,
*Defendant-Respondent,*

*and*

PARHAM INSURANCE AGENCY INC.,
an Oregon corporation;
and Bradley Robert Parham, an Individual,
*Defendants.*

Marion County Circuit Court
09C12928; A150818

344 P3d 467

Brian R. Whitehead argued the cause and filed the briefs for appellants.

Brian C. Hickman argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Wollheim, Senior Judge.*

DUNCAN, P. J.

---

\* Haselton, C. J., *vice* Schuman, S. J.

**DUNCAN, P. J.**

In this civil case, plaintiff 5 Star, Inc. (5 Star) brought claims against its insurer, defendant Atlantic Casualty Insurance Company (Atlantic) for reformation of its insurance policy and for negligent procurement of insurance. Plaintiffs Kevin Rains and Mitzi Rains, who have a judgment against 5 Star, brought a claim against Atlantic pursuant to ORS 742.031, which permits direct actions by judgment creditors against the insurer of an insured, but insolvent, judgment debtor. Atlantic filed a motion for summary judgment on all of the claims against it, and the trial court granted the motion and entered a limited judgment dismissing all of the claims against Atlantic. 5 Star and the Rainses appeal. For the reasons explained below, we conclude that the trial court did not err in granting Atlantic's motion, and, therefore, we affirm.

## I. STANDARD OF REVIEW

We will affirm the trial court's granting of Atlantic's motion for summary judgment if, viewing the record on summary judgment in the light most favorable to plaintiffs, as the nonmoving party, we determine that there is no genuine issue of material fact and Atlantic is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

## II. HISTORICAL AND PROCEDURAL FACTS

At all times relevant to this appeal, 5 Star was a general contractor and, as such, was required by *former* ORS 701.105(1) (2003)[1] to have insurance. In 2001, Jerry Molan, the president and owner of 5 Star, contacted an insurance agent, Bradley Parham, to obtain insurance for 5 Star. Parham completed, and Molan signed, several insurance applications stating that 5 Star did not use subcontractors. Parham secured a one-year business liability policy for 5 Star from Farmers Insurance.

---

[1] *Former* ORS 701.105(1) is set out below, 269 Or App 56-57. In 2007, ORS 701.105 was renumbered to ORS 701.073. Or Laws 2007, ch 836. Throughout this opinion, we refer to the *former* 2003 version of the statute, which was the version in effect at the relevant time.

Farmers Insurance did not renew the policy. As a result, in 2002, Parham sought a replacement business liability policy for 5 Star and submitted an application to an insurance broker, Anchor Bay Insurance Managers (Anchor Bay). In response, Anchor Bay provided Parham a quote for insurance coverage by Atlantic. The policy contained multiple exclusions, including an exclusion for claims arising out of the actions of subcontractors.[2] The policy also stated:

> "The coverage and terms being offered may not be the same or as broad as requested in your application. Please review carefully and advise us immediately if you have any questions."

Parham accepted the quote on behalf of 5 Star, and Atlantic issued a one-year policy. 5 Star renewed the policy with Atlantic in 2003 and 2004.

In 2005, when the policy was in effect, Kevin Rains was severely injured while working as a subcontractor for 5 Star. Rains and his wife, Mitzi Rains, brought an action against 5 Star and others. Atlantic denied coverage and refused to defend 5 Star. 5 Star did not appear to defend itself, and the trial court entered a default judgment against 5 Star, awarding the Rainses approximately $18 million dollars. *See Rains v. Stayton Builders Mart, Inc.*, 264 Or App 636, 639 n 1, 336 P3d 483 (2014).

Thereafter, 5 Star entered into a settlement agreement with the Rainses. The agreement relieved 5 Star of any obligation to pay the $18 million judgment in exchange for 5 Star holding its claims against Parham and Atlantic "in trust" for the Rainses.

5 Star and the Rainses then filed the present action. 5 Star's claims against Atlantic alleged, *inter alia*, that (1) 5 Star was entitled to have its insurance policy with Atlantic reformed to include coverage for subcontractors and (2) Parham had negligently failed to procure adequate insurance for 5 Star, and Atlantic was vicariously liable for Parham's failure because Parham was Atlantic's agent.

---

[2] The policy stated, in pertinent part, "You or any insured are not covered for claims, loss, costs or expense arising out of the actions of Independent contractors/subcontractors for or on behalf of any Insured."

More than a year later, 5 Star filed a second action, claiming, *inter alia*, that Anchor Bay and one of its employees had negligently failed to procure adequate insurance and that Atlantic was vicariously liable for that failure. The trial court had previously denied a request by 5 Star to amend the complaint in this case to include the allegations against Anchor Bay and its employee, but the court consolidated the two cases for trial.

In this action, Atlantic moved for summary judgment, and the trial court entered a limited judgment dismissing with prejudice all of the claims against Atlantic. That limited judgment is the subject of this appeal.

In the second action, the trial court entered a general judgment in favor of all of the defendants, including Atlantic, ruling that the action was untimely and, in any event, the claims lacked merit. That judgment was entered before the judgment in this action and was the subject of a separate appeal, in which we affirmed the judgment without a written opinion. *5 Star, Inc. v. Crist*, 257 Or App 420, 304 P3d 468 (2013).

## III. CLAIM PRECLUSION

As an initial matter, Atlantic argues that 5 Star's appellate arguments are precluded by the final judgment in the second action. Atlantic argues that, because the two actions involve the same transaction and occurrence and seek the same damages, and because 5 Star has already prosecuted the second action to finality, the judgment in that case precludes 5 Star's appeal in this case.

Under the doctrine of claim preclusion,

"a plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action."

*Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982). This case does not present the typical scenario for

application of claim preclusion, where one action is prosecuted to completion and a second action is subsequently brought by the same plaintiff against the same defendant. *See, e.g., Krisor v. Lake County Fair Board*, 256 Or App 190, 302 P3d 455, *rev den*, 354 Or 61 (2013) (claim preclusion, as that term is typically used, formerly known as *res judicata*, prohibits a party from relitigating a cause of action against the same defendant involving the same factual transaction as was litigated in the previous adjudication, if there has been a final judgment in the first action). Here, 5 Star attempted to amend the complaint to allege the additional claims relating to Anchor Bay and its employee, but Atlantic opposed joinder. The trial court denied plaintiffs' motion to amend the complaint, and 5 Star filed the claims as a separate action. The trial court assumed that the two cases could proceed simultaneously and consolidated them for trial. Under those circumstances, we conclude that the final judgment in the second action did not preclude plaintiffs from litigating its claims in this case.

## IV. REFORMATION

In its first assignment of error, 5 Star asserts that the trial court erred in "dismissing its reformation claim." 5 Star contends that it was entitled to reformation of its insurance policy with Atlantic under either of two theories: statutory reformation or common-law reformation. We address the two theories in turn.

### A. *Statutory Reformation*

5 Star's theory of statutory reformation is that its insurance policy with Atlantic does not meet the requirements for contractor's insurance established by *former* ORS 701.105 and must be reformed to do so. *Former* ORS 701.105 provides, in part:

> "[A] contractor who possesses a license as required under this chapter shall have in effect public liability, personal injury and property damage insurance covering the work of the contractor that is the subject of this chapter, for an amount not less than:
>
> "(a) $500,000 for a general contractor ***.
>
> "(b) $300,000 for a residential-only specialty contractor.

"(c) $500,000 for all other specialty contractors.

"(d) $100,000 for a limited contractor.

"(e) $300,000 for an inspector.

"* * * * *

"(4) The contractor shall provide satisfactory evidence to the [Construction Contractors Board (CCB)] at the time of licensure and renewal that the insurance policy * * * has been procured and is in effect."

Thus, by its terms, *former* ORS 701.105 requires a contractor to have insurance "covering the work of the contractor that is the subject" of ORS chapter 701. It also specifies the amount of insurance required, which varies depending on the type of contractor. 5 Star was a general contractor and, as such, it was required to have $500,000 in insurance.

There is no dispute that 5 Star had $500,000 in insurance; its policy with Atlantic provided insurance in that amount. However, there is a dispute about whether the insurance was adequate, in light of the fact that it contained exclusions from coverage, in particular, the exclusion from coverage for the actions of subcontractors. 5 Star argues that *former* ORS 701.105 does not allow for any exclusions, or at least not exclusions like the subcontractor exclusion in its policy.

Atlantic responds that *former* ORS 701.105 allows for exclusions. It points out that the text of the statute does not prohibit exclusions. And, it contends that exclusions for certain claims—such as exclusions for damages resulting from mold, asbestos, and lead—are common in contractors' insurance policies and that, reading *former* ORS 701.105 to prohibit any exclusions, would be "a sea-change in Oregon insurance law and would judicially modify nearly every contractor's policy in the state."

We need not resolve whether *former* ORS 701.105 allows exceptions to coverage because, in order to prevail on its statutory reformation claim, 5 Star must establish not only that the policy violates the statute, but also that Atlantic had an obligation to provide insurance that satisfied

the statute and, for the reasons that follow, we reject 5 Star's argument that Atlantic had such an obligation.[3]

Under the doctrine of statutory reformation, or statutory incorporation, statutory requirements are deemed to be part of an insurance policy, adding to or displacing the provisions of the policy itself. *See Rhone v. Louis*, 282 Or 693, 580 P2d 549 (1978) (describing doctrine). As a practical matter, statutory reformation usually expands the obligations of the insurer beyond the written terms of the policy.

In this case, 5 Star argues that its insurance policy must be reformed to satisfy the requirements of *former* ORS 701.105 (which 5 Star believes prohibits all exclusions from coverage, or at least exclusions from coverage for the work of subcontractors) because Atlantic was subject to a "legal directive" to provide insurance that satisfied *former* ORS 701.105. We disagree with 5 Star's argument.

*Former* ORS 701.105 does not impose a legal obligation on insurers. As set out above, the statute provides that "[a] contractor who possesses a license as required under this Chapter shall have in effect public liability,

---

[3] We do note that, to the extent that 5 Star argues that *former* ORS 701.105 requires all general contractors to have insurance to cover the work of subcontractors, it is incorrect. For the purposes of this appeal, "general contractor" is defined by ORS 701.005(3) (2003), as a contractor

"whose business operations require the use of more than two unrelated building trades or crafts that the contractor supervises or performs in whole or part, whenever the sum of all contracts on any single property, including materials and labor, exceeds an amount established by rule by the board. 'General contractor' does not include specialty contractors or limited contractors, as described in ORS 701.085."

It is true that, a general contractor, such as 5 Star, could use subcontractors, *i.e.*, "specialty contractors," ORS 701.005(11) (2003), in its work licensed under ORS chapter 701, but a contractor may be a general contractor, as defined by ORS 701.005 (2003), if the contractor itself performs two or more unrelated building trades and the sum of the contract on a single property exceeds an amount established by rule. *Former* ORS 701.105 provides that a contractor must have coverage for its work as a contractor, but it does not specify the scope of that work (which can vary from contractor to contractor). *Former* ORS 701.105 requires an individual contractor to determine the work that it performs that is subject to licensure and obtain the statutorily required coverage for that work. Nothing in *former* ORS 701.105 requires a contractor to obtain coverage for every trade or person that a contractor could use. Thus, if a general contractor does not use subcontractors, nothing in the statute requires the general contractor to obtain coverage for the work of subcontractors.

personal injury and property damages insurance covering the work of the contractor that is the subject of this Chapter." As 5 Star concedes, the statute is directed at contractors, not insurers. It creates a legal obligation for contractors, but it does not specify that insurers must cover particular losses.

5 Star acknowledges as much and contends that, although the statute itself is not directed at insurers, an administrative rule is, and the rule—*former* OAR 812-003-0015 (2004)—constitutes a "legal directive" to insurers. The rule provides, in pertinent part:

> "(2)(a) An application for a license or renewal shall certify that the applicant has procured insurance, from an insurance company authorized to do business in Oregon, as required by ORS 701.105 and will continue to meet those insurance requirements for as long as the applicant is licensed. New licensees shall provide a certificate of insurance issued by an insurance company licensed in Oregon. The agency may also require such certification from renewing licensees. As a minimum, for all licensees, certification shall include the name of the insurance company, policy or binder number, effective dates of coverage, and coverage amount, and may also include the agent's name, and agent's telephone number. The CCB must be listed as the certificate holder."

Thus, by its terms, *former* OAR 812-003-0015(2)(a) requires contractors seeking an initial license or renewal of an existing license to certify that they have the insurance coverage required by *former* ORS 701.105 and will continue to meet the insurance requirements for as long as they are licensed. The rule also states that new licensees must provide a certificate of insurance issued by an insurer and that the CCB may require such certificates from renewing licensees as well. Under the rule, the CCB "must be listed as the certificate holder." 5 Star argues that the rule creates an obligation on insurers to determine and certify that the insurance they provide to contractors satisfies the requirements of *former* ORS 701.105.

Even assuming that an administrative rule could give rise to the application of statutory reformation, we conclude that the rule invoked by 5 Star does not. Under

the rule, a contractor has the obligation to certify that its insurance satisfies the requirements of *former* ORS 701.105. Although the contractor may have to provide a certificate from an insurer to do so, nothing in the rule indicates that the burden is on the insurer (as opposed to the contractor) to determine the scope of the contractor's work (which it would have to do in order to certify that the insurance satisfies *former* ORS 701.105). If, for example, a contractor informs an insurer that it does not do electrical work and obtains a policy from the insurer that excludes coverage for electrical work, nothing in *former* OAR 812-003-0015(2) indicates that, if the contractor actually does electrical work during the policy period and causes damages, the policy must be reformed to cover those damages because the insurer was somehow subject to a "legal directive" to cover those damages. Thus, contrary to 5 Star's argument, *former* OAR 812-003-0015(2) does not create a "legal directive" to insurers that would justify reformation of 5 Star's insurance policy with Atlantic.

B. *Common-Law Reformation*

5 Star also argues that it was entitled to reformation of its insurance policy with Atlantic under a common-law reformation theory. The test for common-law reformation in Oregon is as follows:

> "[A] party must prove, by clear and convincing evidence, the following three elements:
>
> "(1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence."

*Pioneer Resources, LLC v. D. R. Johnson Lumber Co.*, 187 Or App 341, 364, 68 P3d 233, *rev den*, 336 Or 16 (2003) (internal quotations omitted).

Atlantic argues that 5 Star's common-law reformation theory fails because, *inter alia*, there is no evidence of an antecedent agreement, let alone one that is sufficiently specific, to which the insurance policy can be reformed. *See*

*Aero Sales, Inc. v. City of Salem*, 200 Or App 194, 202, 114 P3d 510 (2005) ("[T]he antecedent agreement must be sufficiently specific so that a contract can be reformed to accurately reflect the missing term."); *Shogun's Gallery, Inc. v. Merrill*, 229 Or App 137, 149, 210 P3d 920 (2009) (holding that the trial court erred by granting reformation because the parties never reached an antecedent agreement regarding whether plaintiff's improvements to the building would affect rent escalation). We agree. There is no evidence that 5 Star and Atlantic entered into an agreement about the terms of the coverage other than the one reflected in the written policy, much less one that was sufficiently specific that the policy could be reformed. 5 Star seeks to have the policy reformed to remove, at a minimum, the exclusion from coverage for the actions of subcontractors, but there is no evidence that Atlantic ever agreed to provide coverage that would cover the actions of subcontractors. 5 Star argues that Parham agreed to obtain coverage that would satisfy *former* ORS 701.105, and that agreement included, at least implicitly, an agreement to obtain coverage for the work of subcontractors. But, Parham was 5 Star's agent, not Atlantic's (either under a common-law theory of agency, which 5 Star does not suggest, or under ORS 744.078(4), discussed below). 5 Star may have had an agreement with Parham, but there is no evidence that it had one with Atlantic.

## V. NEGLIGENT PROCUREMENT OF INSURANCE

In its second and third assignments of error, 5 Star argues that the trial court erred in granting Atlantic's motion for summary judgment with respect to 5 Star's claim for negligent procurement of insurance. 5 Star alleged negligent procurement of insurance against both Parham and Atlantic. The claim against Atlantic is premised on Atlantic's vicarious liability for Parham's actions. 5 Star does not argue that Parham was Atlantic's agent under a common-law theory of agency. Rather, 5 Star argues only that Parham was Atlantic's agent pursuant to ORS 744.078(4). Thus, 5 Star can prevail on its negligent procurement claim against Atlantic only if (1) Parham was Atlantic's agent by operation

of ORS 744.078(4); and (2) 5 Star subsequently prevails in its negligent procurement claim against Parham, which is held in abeyance pending appeal.

In its second assignment of error, 5 Star argues that the trial court erroneously concluded that Parham did not become Atlantic's agent by virtue of ORS 744.078, which provides, in part:

"(1) An insurance producer shall not act as an agent of an insurer unless:

"(a) The insurance producer is an appointed agent of that insurer; or

"(b) The insurance producer transacts insurance on behalf of another insurance producer who is an appointed agent of that insurer according to conditions and limitations established by the Director of the Department of Consummer and Business Services by rule.

"(2) Each insurer shall maintain a current list of insurance producers contractually authorized to accept applications on behalf of the insurer. Each insurer shall make the list available to the director upon request.

"(3) An insurance producer may represent as agent under one insurance producer license as many insurers as may appoint the insurance producer in accordance with this section.

"(4) Except as provided in a group contract of insurance under subsection (5) of this section, any person who solicits or procures an application for insurance *as an agent of the insurer* shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provision in the application and policy to the contrary is invalid and of no effect."

(Emphasis added.) 5 Star argues that, under ORS 744.078(4), any person who solicits or procures an application for insurance as an agent for an insured is the agent of the insurer in all matters relating to that application for insurance.

Setting aside for the moment the question whether Parham did, in fact, "solicit[] or procure[] an application for insurance" as provided in ORS 744.078(4), we reject 5 Star's

contention that, apart from any common-law theory of agency, under ORS 744.078(4), whenever a person solicits or procures an application for insurance as an agent for *an insured,* that person becomes the agent *of the insurer* in all matters relating to that application for insurance. That is because the text of the statute requires a different conclusion.

ORS 744.078(4) provides unambiguously that any person who solicits or procures an application for insurance *as an agent for the insurer* is the agent of the insurer in all matters relating to the application for insurance and the policy issued as a result of the application.[4] Thus, only a person who solicits or procures an insurance policy as an agent of the insurer is an agent of the insurer in all matters relating to the application and the policy.

Context confirms our interpretation. As provided in ORS 744.078(1), an insurance producer "shall not act as an agent of an insurer" unless one of two circumstances occurs: (1) the insurance producer is an appointed agent for the insurer; or (2) the insurance producer transacts insurance on behalf of another insurance producer who is an appointed agent of the insurer. There is no contention that the record on summary judgment provides evidence of either of those circumstances here. And no reasonable reading of the statute supports 5 Star's interpretation that any person who works with an *insured* to obtain a policy of insurance becomes an agent of the *insurer.* We conclude from the unambiguous text of ORS 744.078(4) and its context that only a person who solicits or procures an insurance application as an agent of the insurer is an agent of the insurer for all other purposes

___

[4] Further, the statute provides, if an insurance policy contains a provision stating that the person soliciting or procuring the application for insurance as the agent of the insurer is not, in fact, the agent of the insurer that provision is invalid. Thus, a person who solicits or procures an application for insurance is an agent of the insurer if the person solicits or procures the application as an agent for the insurer. And ORS 744.078(4) prevents an insurer from avoiding liability for the actions of its agent in soliciting and procuring an application for insurance by including a provision in the policy expressly disclaiming any agency relationship. *See Paulson v. Western Life Insurance Defense Co.,* 292 Or 38, 60, 636 P2d 935 (1981) (discussing the purpose of a predecessor statute and stating that neither the insurance policy nor the application for insurance "can limit the existing agency relationship"). That issue is not involved in this case, however.

relating to the insurance policy.[5] There is no evidence on this record that Parham solicited or procured an application for insurance as an agent of Atlantic. Thus, the trial court did not err in granting summary judgment in favor of Atlantic on the negligent procurement claim.

In light of our conclusion that Atlantic is not vicariously liable for Parham's conduct under ORS 744.078(4), we need not address 5 Star's third assignment of error, in which it contends that the trial court erred in rejecting 5 Star's contention that Parham's conduct in applying for and obtaining the insurance policy fell within the ambit of "matters relating to the application for insurance and

---

[5] As 5 Star correctly notes, the text "as an agent for the insurer" was added to ORS 744.078 in 2003 as a part of a major revision of the insurance code. Or Laws 2003, ch 364, § 18. Before that amendment, the section read, as relevant:

"(1) An agent shall not act as an agent of an insurer unless the agent is an appointed agent of that insurer.

"*****

"(4) *** [A]ny person who solicits or procures an application for insurance shall in all matters relating to the application for insurance and the policy issued in consequence of the application be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provision in the application and policy to the contrary is invalid and of no effect."

5 Star contends that the addition of the text "as an agent of the insurer" to subsection (4) supports its view that persons who assist an insured with an application for insurance become agents of the insurer as a matter of law. We briefly describe that history, because it provides potential context for and supports our interpretation of the statute.

The 2003 changes were intended to bring Oregon's insurance licensing scheme into line with most other states by eliminating the "agent" category and replacing it with the umbrella category of "insurance producer," which was defined to encompass those who represent either the insurer or the insured. Or Laws 2003, ch 364, § 1. Testimony, House Committee on Business, Labor, and Consumer Affairs, SB 253 A-Engrossed, April 30, 2003, Ex J (statement of Insurance Administrator Joel Ario). SB 253 amended ORS 744.078(4) by adding "as an agent of the insurer" after the phrase "any person who solicits or procures an application for insurance." Or Laws 2003, ch 364, § 18. When the legislature amended the insurance code in 2003 to define "insurance producers" as entities who could represent either the insured or the insurer, it was necessary to clarify that under ORS 744.078(4), a person is the *agent* of the insurer only when that person is acting as an agent of the insurer—as opposed to an agent of the insured—in soliciting or procuring insurance.

Below, 5 Star offered the affidavit of a person who said he had drafted the 2003 amendments as evidence of the legislature's intent. But, contrary to 5 Star's contention, a drafter's post-enactment affidavit is not legislative history that may be considered in determining legislative intent. *Salem-Keizer Assn. v. Salem-Keizer Sch. Dist. 24J*, 186 Or App 19, 26, 61 P3d 970 (2003) (subsequent statements by legislators are not probative of intent of statutes already in effect).

the policy issued as a result of the application" under ORS 744.078(4).

## VI. CONCLUSION

In sum, we conclude that 5 Star is not entitled to reversal on the ground that the trial court erred in dismissing its reformation claim because, contrary to 5 Star's statutory reformation argument, *former* OAR 812-003-0015(2)(a) does not constitute a "legal directive" that required Atlantic to provide insurance that satisfied *former* ORS 701.105, and, as for 5 Star's common-law reformation argument, there is no evidence that 5 Star and Atlantic agreed that Atlantic would provide insurance that satisfied *former* ORS 701.105.[6] And, we further conclude that 5 Star is not entitled to reversal on the ground that the trial court erred in dismissing its negligent procurement of insurance claim against Atlantic, because, contrary to 5 Star's argument, Parham was not an agent of Atlantic under ORS 744.078(4).

Affirmed.

---

[6] Our rejection of 5 Star's reformation claims disposes of the Rainses' claims, which, as they acknowledge, are contingent on reformation of 5 Star's policy with Atlantic.