Argued and submitted July 28, 2014, vacated and remanded December 30, 2015

Wendilyn EMRYS,
a Personal Representative of the
Estate of Barbara Caballero,
*Plaintiff-Appellant,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Defendant-Respondent.*

Douglas County Circuit Court
11CV0557CC; A152554

365 P3d 1119

George W. Kelly argued the cause and filed the briefs for appellant.

Francis J. Maloney argued the cause for respondent. With him on the brief were Beth Cupani and Maloney Lauersdorf Reiner PC.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Plaintiff appeals a general judgment dismissing her action to reform an insurance contract and for breach of that contract. She contends that the trial court erred in concluding that plaintiff and defendant did not have an antecedent agreement and, as a consequence of that conclusion, in refusing to reform the parties' insurance contract to reflect the terms of the alleged antecedent agreement. Defendant responds that plaintiff's contention is unpreserved because she offers a different theory on appeal than the one she offered at trial about when the parties formed the antecedent agreement. Defendant also cross-assigns error to the trial court's finding that the parties had made a mutual mistake of fact in drafting the contract, as the trial court was required to find in order to reform the contract. As we explain, we agree with plaintiff that the court erred, and we vacate and remand for the court to reconsider its decision in light of this opinion.

Plaintiff asks us to exercise our discretion to review *de novo* certain findings that the trial court made in this equity case, arguing that this is an exceptional case. *See* ORS 19.415(3); ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion * * * to make one or more factual findings anew on the record only in exceptional cases."). We decline to do that. Therefore, "we review the court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 319, 129 P3d 773, *rev den*, 341 Or 366 (2006). Based on that standard, the facts are as follows.

Plaintiff is the personal representative of Caballero's estate, which owned five parcels of land near Yoncalla in Douglas County, two of which had houses on them. The two houses were located next to each other at 106 and 108 Cofey Crossing Lane, respectively. Caballero purchased two landlord insurance policies from defendant in 2001, one for each house. The policies covered, among other things, fire damage to the houses. However, both policies contained inaccurate legal descriptions for the insured properties, and neither policy included street addresses for the properties.

The policies were renewable on a yearly basis. Through its agents, defendant contacted the Douglas County Planning Department in 2004 and asked the department to provide it with the street addresses for the properties covered by the policies. A year later, before defendant's agents had heard back from the county, Caballero allowed one of the policies to lapse. The Douglas County Planning Department subsequently told defendant's agents that the address for the property covered by the remaining insurance policy was 108 Cofey Crossing Lane, and defendant amended the policy to identify the property by that address. Caballero died in 2006, and plaintiff, Caballero's niece, was appointed personal representative of Caballero's estate. The house at 106 Cofey Crossing Lane was being leased by a tenant at the time that Caballero died; the house at 108 Cofey Crossing Lane was uninhabited.

When plaintiff became personal representative of Caballero's estate, she did not know that Caballero had owned property in Yoncalla. Plaintiff first became aware of the property when, in going through Caballero's belongings, she found a card that defendant's agents had sent to Caballero, asking her to call them about the property. Plaintiff investigated and learned of the five Yoncalla parcels, acquiring in the process the tax identification numbers for them. Plaintiff also learned that Caballero had hired a property management company, North County Realty, to lease one of the houses on the Yoncalla property. Plaintiff called North County Realty and was told that a tenant was still renting the house. Plaintiff then called defendant in April 2006 and asked one of defendant's agents "if they insured the properties in Yoncalla for the Caballeros." She was told that they did, and she agreed during the telephone call to purchase a landlord insurance policy for the Yoncalla property from defendant, telling defendant's agent that she wanted to continue the existing policy for the leased property. She also told defendant's agent that she had little knowledge of the property, giving the agent the tax identification numbers for the parcels and telling the agent to contact North County Realty for any additional information that it needed about the location of the leased house. Thereafter, defendant's agents sent plaintiff invoices listing the property covered

by the policy as "108 Coffee Crossing." The estate paid the premiums for the policy. Plaintiff testified that she believed that the policy covered the leased property. It was defendant's practice not to provide a landlord insurance policy for properties that were not rented by a tenant.

The house at 106 Cofey Crossing Lane—the property rented by a tenant—was damaged by fire in 2010. Plaintiff filed a claim with defendant on behalf of Caballero's estate, seeking compensation for the damage to the house. Defendant denied the claim on the ground that its insurance policy covered the house at 108 Cofey Crossing Lane, not the house at 106 Cofey Crossing Lane. Plaintiff responded by filing an action against defendant seeking reformation of the insurance contract to cover the house at 106 Cofey Crossing Lane and damages for breach of the reformed contract.

For context, we summarize the basic principles of contract reformation. A party seeking to reform a contract on the ground of mutual mistake must prove by clear and convincing evidence the existence of an antecedent agreement to which the contract can be reformed, that there was a mutual mistake in memorializing the agreement, and that the party seeking reformation was not guilty of gross negligence. *See, e.g., Foster v. Gibbons*, 177 Or App 45, 53, 33 P3d 329 (2001). "The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties." *Manning Lumber Co. v. Voget*, 188 Or 486, 500, 216 P2d 674 (1950). For purposes of contract reformation, a mutual mistake occurs when there was an error "in the *drafting* of the instrument and not in the *making* of the contract." *Interior Elevator Co. v. Limmeroth*, 278 Or 589, 597, 565 P2d 1074 (1977) (emphasis in original).

Plaintiff's reformation case went to trial, at which plaintiff testified and in which she identified only one interaction that she had had with defendant before the fire—the 2006 telephone call in which she discussed continuing the landlord insurance policy. She explained:

"Q. So what did you talk to Farmers about when you called them?

"A.   Well, I told them there was rental property because I'd found that out from North County Realty in Yoncalla and that I wanted to verify that we had a landlord policy and that we were covered and I wanted to continue paying and have the payments sent to my address so that we could make sure that there was no lapse in coverage.

"* * * * *

"Q.   And what did you tell Farmers in regard to the situation with the estate, your involvement?

"A.   Well, I said that Barbara was recently deceased and I said that it was, you know, going into probate and we were trying to, you know, I had no idea what was going on in Oregon because I've never—I had never been there at this point.

"Q.   And what did you tell Farmers about the location of the property?

"A.   That it was in Yoncalla and I asked them to get the specifics, to call North County Realty, because they were the managers and they were the on-site people handling everything."

During her closing argument at trial, plaintiff contended that an antecedent agreement was formed each time that plaintiff continued or renewed the landlord insurance contract, and she told the court that her testimony supported that contention. Plaintiff also contended that, when plaintiff called defendant to continue the landlord insurance contract, the parties were mutually mistaken that the contract covered the house that the estate was leasing to the tenant.

Defendant responded that the original 2001 contract with Caballero was the only agreement that could function as an antecedent agreement. It further asserted that, even if the 2006 telephone call could establish an antecedent agreement, it did not do that because defendant believed that plaintiff wanted to continue the policy that defendant had issued for 108 Cofey Crossing Lane and, consequently, defendant could not have had the intention to enter an antecedent agreement to insure any other property.

The trial court concluded that there had been a mutual mistake in identifying the insured property in the

written contract and that plaintiff had not been grossly negligent in failing to recognize and correct the mistake. However, it also concluded that plaintiff had failed to prove that there was an antecedent agreement to which the contract could be reformed. Because plaintiff sought to reform the written agreement to identify the insured property as the property at 106 Cofey Crossing Lane, the court reasoned that the requisite antecedent agreement had to be one that identified the insured property as the property at 106 Cofey Crossing Lane. In the court's view, the evidence did not support a finding that the parties had entered into an agreement that identified the insured property as the property at 106 Cofey Crossing Lane, so the court could not reform the agreement to say that. Consequently, the trial court entered a general judgment dismissing plaintiff's action, which plaintiff appeals.

Plaintiff challenges on appeal the trial court's conclusion that plaintiff had failed to prove that the parties had entered an antecedent agreement in 2006 that identified the insured property as the property at 106 Cofey Crossing Lane. Defendant responds that plaintiff did not contend at trial that the parties had formed an antecedent agreement during the 2006 telephone conversation between plaintiff and defendant's agent and, consequently, that plaintiff's contention is unpreserved. Defendant also contends that the trial court properly understood what the parties were required to do to enter an antecedent agreement and that the court did not err in finding that there was no antecedent agreement between plaintiff and defendant to insure the property at 106 Cofey Crossing Lane.

Defendant contends in its cross-assignment of error that the trial court erred in concluding that there had been a mutual mistake. According to defendant, the court's explanation of its conclusion on that issue indicates that its conclusion was based on a finding that the parties had not agreed on which of the two houses on Cofey Crossing Lane was the subject of the insurance contract, which suggests that the mistake was a mistake in forming the contract rather than drafting it. Plaintiff responds that the facts support the trial court's conclusion that there was a mutual mistake sufficient to support reformation.

To begin, we disagree with defendant's contention that plaintiff failed to preserve her argument that the parties entered into an antecedent agreement during plaintiff's 2006 telephone conversation with defendant's agent. Plaintiff told the court in closing that plaintiff's trial testimony provided evidence to support plaintiff's contention that the agreements to continue and to renew the landlord insurance contract were the requisite antecedent agreements. Plaintiff testified about only one interaction with defendant that could be construed as the continuation of the contract—the 2006 telephone conversation between plaintiff and defendant's agent. In light of that testimony, we understand plaintiff's argument to the trial court to have been that the court could find that the parties had entered into the requisite antecedent agreement during the 2006 telephone conversation. Consequently, we conclude that plaintiff preserved the argument that she makes on appeal.

As to the merits of plaintiff's assignment of error, we conclude that the trial court misconceived the nature of the required antecedent agreement. Contrary to the court's understanding, the antecedent agreement did not have to be one that identified the property to be insured as the property at 106 Cofey Crossing Lane. If the parties agreed to enter into a landlord insurance contract to insure the leased property in Yoncalla but entered into a written agreement that misidentified that property, then the court could reform the written agreement to correctly identify the property. There is evidence in the record that would permit the trial court to find by clear and convincing evidence that the parties had entered into the requisite antecedent agreement, that is, an agreement to insure the leased property—the property at 106 Cofey Crossing Lane—and the court could reform the contract accordingly. It is for the trial court, as factfinder, to determine whether the parties entered into such an agreement.

We turn to defendant's contention in its cross-assignment that the court erred in determining that there had been a mutual mistake. We do not address the merits of the assignment because the determination that parties to a written agreement were mutually mistaken about whether it correctly embodied their antecedent agreement depends on

the content of the antecedent agreement. Because we must remand the case to the trial court to determine whether the parties agreed to insure the leased property, the court must also resolve on remand whether the parties were mutually mistaken about whether the written agreement did that.

Vacated and remanded.