GARRETT, J.
*108 In this case, which is before us for the second time, plaintiff seeks reformation of an insurance contract.
In plaintiff's first appeal, we concluded that the trial court had applied the wrong legal standard in assessing whether plaintiff had proved the existence of an antecedent agreement. Emrys v. Farmers Ins. Co. , 275 Or. App. 691, 698, 365 P.3d 1119 (2015) ( Emrys I ) (vacating and remanding for reconsideration). On remand, the trial court again concluded that plaintiff had failed to prove the existence of an antecedent agreement by clear and convincing evidence. In this second appeal, plaintiff argues that the trial court again erred in ruling that she had failed to prove the existence of an antecedent agreement regarding the identity of the insured property. We agree with plaintiff. Moreover, as explained below, we exercise our discretion to review the case de novo[1] and, having done so, we find that plaintiff and defendant agreed that the insurance policy would cover the property that was actively being rented and was managed by North County Realty. Based on that finding, we conclude that plaintiff and defendant entered into an antecedent agreement to cover the rental property located at 106 Cofey Crossing Lane in Yoncalla and that the policy can be reformed to match the parties' intent.
The operative facts are set out in Emrys I :
"Plaintiff is the personal representative of Caballero's estate, which owned five parcels of land near Yoncalla in Douglas County, two of which had houses on them. The two houses were located next to each other at 106 and 108 Cofey Crossing Lane, respectively. Caballero purchased two landlord insurance policies from defendant in 2001, one for each house. The policies covered, among other things, fire damage to the houses. However, both policies contained inaccurate legal descriptions for the insured properties, and neither policy included street addresses for the properties.
*109 The policies were renewable on a yearly basis. Through its agents, defendant contacted the Douglas County Planning Department in 2004 and asked the department to provide it with the street addresses for the properties covered by the policies. A year later, before defendant's agents had heard back from the county, Caballero allowed one of the policies to lapse. The Douglas County Planning Department subsequently told defendant's agents that the address for the property covered by the remaining insurance policy was 108 Cofey Crossing Lane, and defendant amended the policy *1031 to identify the property by that address. Caballero died in 2006, and plaintiff, Caballero's niece, was appointed personal representative of Caballero's estate. The house at 106 Cofey Crossing Lane was being leased by a tenant at the time that Caballero died; the house at 108 Cofey Crossing Lane was uninhabited.
"When plaintiff became personal representative of Caballero's estate, she did not know that Caballero had owned property in Yoncalla. Plaintiff first became aware of the property when, in going through Caballero's belongings, she found a card that defendant's agents had sent to Caballero, asking her to call them about the property. Plaintiff investigated and learned of the five Yoncalla parcels, acquiring in the process the tax identification numbers for them. Plaintiff also learned that Caballero had hired a property management company, North County Realty, to lease one of the houses on the Yoncalla property. Plaintiff called North County Realty and was told that a tenant was still renting the house. Plaintiff then called defendant in April 2006 and asked one of defendant's agents 'if they insured the properties in Yoncalla for the Caballeros.' She was told that they did, and she agreed during the telephone call to purchase a landlord insurance policy for the Yoncalla property from defendant, telling defendant's agent that she wanted to continue the existing policy for the leased property. She also told defendant's agent that she had little knowledge of the property, giving the agent the tax identification numbers for the parcels and telling the agent to contact North County Realty for any additional information that it needed about the location of the leased house. Thereafter, defendant's agents sent plaintiff invoices listing the property covered by the policy as '108 Coffee Crossing.' The estate paid the premiums for the policy. Plaintiff testified that she believed that the policy covered the leased property. It was defendant's practice not to *110 provide a landlord insurance policy for properties that were not rented by a tenant.
"The house at 106 Cofey Crossing Lane-the property rented by a tenant-was damaged by fire in 2010. Plaintiff filed a claim with defendant on behalf of Caballero's estate, seeking compensation for the damage to the house. Defendant denied the claim on the ground that its insurance policy covered the house at 108 Cofey Crossing Lane, not the house at 106 Cofey Crossing Lane. Plaintiff responded by filing an action against defendant seeking reformation of the insurance contract to cover the house at 106 Cofey Crossing Lane and damages for breach of the reformed contract."
275 Or. App. at 693-95, 365 P.3d 1119.
In the proceedings leading up to Emrys I , the trial court determined that the parties had made a mutual mistake in identifying the insured property in the written contract and that plaintiff had not been grossly negligent in failing to recognize and correct the mistake. Despite that finding, the court reached the somewhat inconsistent conclusion that plaintiff had failed to prove the existence of an antecedent agreement, reasoning that "the parties failed to ever have a meeting of the minds in regards to the property descriptions."[2]
We vacated and remanded, reasoning, in relevant part, as follows:
"[T]he trial court misconceived the nature of the required antecedent agreement. Contrary to the court's understanding, the antecedent agreement did not have to be one that identified the property to be insured as the property at 106 Cofey Crossing Lane. If the parties agreed to enter into a landlord insurance contract to insure the leased property in Yoncalla but entered into a written agreement that misidentified that property, then the court could reform the written agreement to correctly identify the property. There is evidence *1032 in the record that would permit the trial *111 court to find by clear and convincing evidence that the parties had entered into the requisite antecedent agreement, that is, an agreement to insure the leased property-the property at 106 Cofey Crossing Lane-and the court could reform the contract accordingly. It is for the trial court, as factfinder, to determine whether the parties entered into such an agreement."
Emrys I , 275 Or. App. at 698, 365 P.3d 1119.
On remand, the trial court took no additional evidence. The court again concluded that plaintiff had not proved the existence of an antecedent agreement by clear and convincing evidence. The court determined that the original contract between the decedent and defendant-i.e. , the policy that was in place at the time of the phone call-could not serve as the antecedent agreement because there was no explanation as to why the decedent had allowed one of the policies to lapse. The court further determined that any "oral contract" between plaintiff and defendant during the phone call also could not serve as the antecedent agreement, reasoning as follows:
"The evidence of [the oral] contract comes from the testimony of [plaintiff]. She expresses her communication, intent, and expectation in different ways. First, she says that she told the insurance agent that she wanted to continue paying what was in place. Second, she said [that] she wanted to verify that a landlord policy [sic ] and that she was covered, that she wanted to continue to pay, and that the bills were to be sent to her. She explained that she didn't know about two structures, but knew one was rented. She asked the insurance agent to get the particulars of the property from the rental agency. Finally, she expressed that she didn't know anything about the particulars of the insurance prior to becoming personal representative, except that the property was insured. She assumed that the entirety of the property was insured under a landlord's policy and potentially a liability policy.
"[Defendant] at the point of that telephone call had an insurance contract covering only a portion of the whole property. It is significant that the parcel that was not insured any longer had been allowed to lapse by the decedent. [Defendant] was not the party that failed to take action that allowed the insurance on one parcel to lapse, *112 despite the fact that [defendant] would not insure uninhabited buildings. [Defendant] here acted on the request of the personal representative to continue the existing insurance and collected a premium on only one parcel, not on the whole of both parcels.
"That being stated, it cannot be said that [plaintiff] has proven by clear and convincing evidence that there was an antecedent contract between the personal representative and [defendant] by this oral contract as there is no 'meeting of the minds.' "
On appeal, plaintiff assigns error to the trial court's denial of her motion for a directed verdict and its ruling that plaintiff had failed to prove the existence of an antecedent agreement by clear and convincing evidence. Plaintiff argues, among other things, that the trial court misapplied the requirements for an antecedent agreement. Defendant responds that plaintiff presented conflicting evidence "that made it impossible to determine whether she intended to (1) continue whatever policy was on file with [defendant], (2) insure the entire property under landlord or liability insurance, whether inhabited or uninhabited, or (3) insure only the leased parcel at some address to be later determined by the realtor."
Contract reformation is available when
" 'the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing. Their mistake is one as to expression-one that relates to the content or effect of the writing that is intended to express their agreement-and the appropriate remedy is reformation of that writing properly to reflect their agreement.' "
A&T Siding, Inc. v. Capitol Specialty Ins. Corp. , 358 Or. 32, 42, 359 P.3d 1178 (2015) (quoting *1033 Restatement (Second) of Contracts § 155 comment a (1981) ). "In Oregon, a court will reform a written agreement if the party seeking that remedy establishes three things: (1) an antecedent agreement to which the contract can be reformed; (2) a mutual mistake or, alternatively, a unilateral mistake by one party along with inequitable conduct by the other party; and (3) the party seeking reformation was not grossly negligent." Id. at 42-43, 359 P.3d 1178. *113 The existence of the antecedent agreement must be proved by clear and convincing evidence. Emrys I , 275 Or. App. at 695, 365 P.3d 1119. However, the antecedent agreement need not be a complete, independently binding agreement. Pioneer Resources, LLC v. D. R. Johnson Lumber Co. , 187 Or. App. 341, 367, 68 P.3d 233, rev. den. , 336 Or. 16, 77 P.3d 319 (2003) ; see also Restatement § 155 comment a ("The prior agreement need not, however, be complete and certain enough to be a contract."). Even an antecedent agreement that encompasses a single term in a contract may support reformation. See Pioneer Resources, LLC , 187 Or. App. at 366, 370-71, 68 P.3d 233 (concluding that a term sheet correctly describing the property that the plaintiff intended to be the subject of the agreement was an antecedent agreement supporting reformation of a land-sale contract). "Nevertheless, the antecedent agreement must be sufficiently specific so that a contract can be reformed to accurately reflect the missing term." Aero Sales, Inc. v. City of Salem , 200 Or. App. 194, 202, 114 P.3d 510 (2005). In order to be sufficiently specific, an insurance policy covering real property does not need to contain "such technical legal descriptions as are usually employed in conveyances of title." Baker v. State Insurance Co. , 31 Or. 41, 44, 48 P. 699 (1897). Instead, when the term at issue is "merely what property was insured," the property may be identified based on the "evident intention of the parties," as demonstrated by "the language used [in the policy], in connection with the nature of the property and the uses and purposes to which it is devoted." Id.
On remand, the trial court erred by requiring a greater degree of specificity for the property description than is actually required to form an antecedent agreement sufficient for reformation. As we stated in Emrys I , it is enough if the parties had agreed that plaintiff would pay premiums on a policy covering the "leased property in Yoncalla" that was being managed by North County Realty. 275 Or. App. at 698, 365 P.3d 1119. The trial court nevertheless appears to have reasoned that, at the time of the call, plaintiff and defendant's agent needed to have a mutual understanding as to (1) the specific parcels that the leased property was located upon and (2) the description of the subject property that was contained in the policy that was already in place. As we held in Emrys I , *114 that level of specificity in an antecedent agreement is not required under these circumstances. Id . Such an agreement needs only to be specific enough to permit reformation of the contract to match the parties' intentions. See Pioneer Resources, LLC , 187 Or. App. at 370, 68 P.3d 233 (" 'The province of reformation is to make a writing express the agreement that the parties intended it should.' " (quoting Restatement § 155 comment a) ).
Plaintiff requests that we exercise our discretion to review de novo ORS 19.415(3)(b) ; ORAP 5.40(8). We exercise that discretion only in exceptional cases. ORAP 5.40(8)(c). For the following reasons, we conclude that this case justifies the exercise of our discretion to review de novo . First, this appeal is before us for the second time raising a similar claim of legal error, and we agree with plaintiff that the trial court erred on remand in much the same way that it erred the first time. Second, the trial court on remand did not take additional evidence, and there is no reason to think that it would do so if we remanded again or that the resolution of the issues on appeal requires additional development of the record. See, e.g. , Benson and Benson , 288 Or. App. 619, 622, 406 P.3d 148 (2017) (citing full development of the record as a factor supporting the decision to exercise de novo review). Third, the trial court has already made the key factual determination that the parties made a mutual mistake that caused the property in the written insurance contract to be identified as 108 Cofey Crossing Lane. A necessary predicate of the parties having made a *1034 mutual mistake in reducing their agreement to writing is that they had an antecedent agreement. See Manning Lumber Co. v. Voget , 188 Or. 486, 500, 216 P.2d 674 (1950) ("The purpose of reformation by a court of equity is to make an erroneous instrument express correctly the real agreement between the parties[.]"). The only question is whether plaintiff has demonstrated by clear and convincing evidence what that antecedent agreement was. On this record, we conclude that the answer to that question turns not on disputed matters of fact, but on the significance of certain facts that are not in dispute. See ORAP 5.40(8)(d)(ii) (relevant considerations in deciding whether to review de novo include "[w]hether the trial *115 court's decision comports with its express factual findings or with uncontroverted evidence in the record").
Specifically, it is undisputed that (1) plaintiff, although lacking complete information about the Yoncalla parcels, communicated her desire to obtain a "landlord" insurance policy; (2) plaintiff directed defendant to contact North County Realty for further information about the leased property; (3) of the two properties at issue, 106 Cofey Crossing Lane was leased and 108 Cofey Crossing Lane was not; (4) defendant had a business practice or policy of not issuing landlord insurance for rental properties that were not leased; and (5) defendant, by delivering a landlord insurance policy to plaintiff and accepting plaintiff's payment of premiums, undertook to provide the insurance that plaintiff said she wanted.
Given that the parties had an antecedent agreement (as the trial court necessarily found), those facts lead us to the conclusion that the agreement was to insure the leased property at 106 Cofey Crossing Lane. The trial court appears to have relied on other comments by plaintiff that, in the court's view, evidenced some inconsistency in her intentions. That reliance was misplaced, because, as the trial court implicitly found, the parties did achieve a meeting of the minds, and (in light of defendant's standard practice not to insure uninhabited properties) there is only one insurance objective on which both parties could have agreed.
Accordingly, we find that plaintiff has demonstrated by clear and convincing evidence that the parties reached an antecedent agreement to insure the leased property located at 106 Cofey Crossing Lane.
Reversed and remanded.

See ORAP 5.40(8)(c) ; A&T Siding, Inc. v. Capitol Specialty Ins. Corp. , 358 Or. 32, 42, 359 P.3d 1178 (2015) ("Reformation *** is an equitable remedy by which a court may revise the written expression of an agreement to conform to the intentions of the parties to it."); see also Troubled Asset Solutions v. Wilcher , 291 Or. App. 522, 525, 422 P.3d 314 (2018) (de novo review is available in appeals from equitable actions).

The inconsistency inheres in the fact that the parties could not have been mutually mistaken about whether the contract correctly memorialized their antecedent agreement unless there was an antecedent agreement. Emrys I , 275 Or. App. at 698-99, 365 P.3d 1119 ("[T]he determination that parties to a written agreement were mutually mistaken about whether it correctly embodied their antecedent agreement depends on the content of the antecedent agreement.").